IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2003 Session

## PRAVIN PATEL, ET UX. v. DOUGLAS A. BAYLIFF, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 306134 T.D.     Robert A. Lanier, Judge**

_____

**No. W2002-00238-COA-R3-CV - Filed March 12, 2003**

_____

This is an appeal from a grant of summary judgment. The underlying case concerned the sale of a home to the Appellants that, subsequent to the closing, evidenced termite damage. Appellant buyers claim that the Appellee sellers are responsible for this damage under various theories of recovery, all of which were dismissed by the trial court. Appellants further assert that the Appellee termite company is responsible for the damages because they failed to disclose on the termite inspection report that the home had been repeatedly treated for termites by that same company. We affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part; Reversed in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY K. LILLARD, J., joined.

Tim Edwards and R. Douglas Hanson, Memphis, Tennessee, for the appellants, Pravin and Mita Patel.

Arnold Goldin, Memphis, Tennessee, for the appellees, Douglas A. Bayliff and Tommie W. Bayliff.

Evan Nahmias, Memphis, Tennessee, for the appellee, Germantown Pest Control Company.

### OPINION

Appellants, Dr. and Mrs. Patel (the Patels), purchased a home from the Appellees, Douglas and Tommie Bayliff (the Bayliffs). The closing on the property occurred on June 2, 1998. It is important to note that, instead of the closing taking place in one location, the Patels signed the necessary documents at their home in Bolivar, TN while the Bayliffs completed their closing documents in Memphis. The Patel's closing attorney received the Bayliffs' documents at his office in Jackson, TN the following day. After reviewing the documents, the Patels' attorney approved the release of the funds to complete the purchase of the home.

Prior to the closing the Patels visited and inspected the residence on numerous occasions. The Patels also hired a home inspector and a stucco inspector to examine the property prior to closing. The dispute, however, centers around the Wood Destroying Insect Infestation Inspection Report (the termite letter) prepared in preparation for the closing on the home.

Appellee Germantown Termite and Pest Control (GTPC) conducted the termite inspection required by the contract for sale of the property entered into by the parties and produced the required termite letter. Section II of the termite letter contains a box next to the statement "[n]o [v]isible evidence of a wood destroying insect infestation was observed." This box was checked by the inspector. The termite letter also has a box which may be checked corresponding to the statement that "[i]t appears that the structure(s) or a portion thereof may have been previously treated. Evidence of previous treatment: _____." This box was not checked by the inspector. The Patels contend that, since GTPC was under contract with the Bayliffs and had treated previous termite problems at the home, GTPC had a duty to check this box, thereby alerting the Patels of these prior treatments.[1] GTPC maintains that they had no such duty unless such information was specifically requested by the Appellants.

Appellee Bayliff (seller) was required to sign the termite letter in Section VIII. This section, entitled "Statement of Buyer & Seller," contains the following language immediately preceding the Appellee's signature.

> This report is integral to, and a necessary part of the inspecting company's full disclosure as to the scope and inherent limitations of the inspection and report of findings. It is most important that the interested parties acknowledge this advice. ***The Seller hereto agrees that all known property history information regarding WDI infestation, damage from infestation, and treatment history has been disclosed to the Buyer***. (Emphasis in original.)

---

[1]GTPC admits that it was called to the home on the following dates:

May 16, 1995: Called for termites, which were determined to be ants.

June 4, 1996: Observed live termites in rear wall under underneath windows. Applied treatment.

April 23, 1997: Applied additional treatment to area of June 4 treatment at request of Mr. Bayliff.

May 6, 1997: Applied treatment to exterior step which was inaccessible on the April visit.

December 17, 1997: Corrective treatment applied to rear wall.

March 10, 1998: Treatment applied to a room in the house.

The closing on the home took place on June 2, 1998.

As noted, Mr. Bayliff signed the termite letter in the space provided below this statement. The Patels did not receive the termite letter until the day after signing the documents for the closing. The closing attorney testified that "I would not have disbursed funds without [Dr. Patel] knowing everything that was on the termite letter." It appears that the funds were not released for the closing until after the termite letter was received.

The Patels began experiencing "leak issues" approximately one (1) month after moving into the residence. Further damage was noted in the Fall of 1998. An individual from Keystone Builders came to the residence and identified the problem as termites. The Patels contacted GTPC who sent an individual to inspect the damage and make needed repairs. GTPC subsequently treated the residence. Despite the treatment, the Patels continued to experience numerous termite related problems between January and April 1999. The Patels claim that the repairs made by GTPC were substandard and offered the testimony of a representative of AAA Restoration Services, Inc. that the cost to repair the damage is estimated at $40K to $50K.

The Patels filed suit against the Bayliffs, GTPC, and other parties who were later dismissed. In the initial complaint the plaintiffs alleged that the Bayliffs were guilty of "fraudulent misrepresentation/concealment," and "negligent misrepresentation." The claims against GTPC were for negligent misrepresentation, breach of contract and violation of the Tennessee Consumer Protection Act. The plaintiffs subsequently amended their complaint to further allege violation of the Tennessee Residential Property Disclosures Act[2] (TRPDA) by the Bayliffs, and the Restatement of Torts (Second) § 552[3] by the Bayliffs and GTPC.

Based on these allegations, the plaintiffs asked that the contract for sale of the residence be rescinded, and also that they be awarded monetary damages. The TRPDA claim was dismissed upon motion of the Bayliffs that it had not been filed within the one year statute of limitations. The Bayliffs then moved for summary judgment as to all remaining claims, and the motion was granted "as to tort actions based upon deceit or misrepresentation, intentional or negligent." Summary judgment was denied, however, "on the action for rescission." As the "action for rescission" to which the court referred was tied to the claims of "fraudulent misrepresentation/concealment," these claims remained to be addressed.

GTPC also filed a motion for summary judgment, which was initially denied. Upon a motion to reconsider, however, the trial court granted summary judgment to GTPC "on the theory of misrepresentation." This order was subsequently modified, making the order a final, appealable order.

The Patels and the Bayliffs also filed motions for reconsideration with the trial court. The court addressed these motions and the outstanding claims of fraudulent misrepresentation and/or

---

[2]Tenn. Code Ann. § 66-5-201 *et seq.*

[3]This section of the Restatement is entitled "Negligent Misrepresentation."

concealment in an order dated January 2, 2002, wherein the court denied the plaintiffs' motion for reconsideration and granted that of the defendant Bayliff on the rescission issue. Having disposed of all the issues pertaining to the Bayliffs, the court "ma[de] an express determination in this cause that there is no just reason for delay and hereby expressly directs entry of Final Judgment in favor of [the Bayliffs] on their motion for summary judgment, and this cause be and the same is hereby dismissed as to [the Bayliffs] in its entirety." This appeal followed.

### *Issues*

The Appellant raises two issues on appeal:

(1) Whether the trial court erred in granting summary judgment to the defendant, Bayliffs; and

(2) Whether the trial court erred in granting summary judgment as to the defendant**,** Germantown Termite and Pest Control.

### *Standard of Review*

As indicated, this is an appeal from a grant of summary judgment. The standard for review of a motion for summary judgment is set forth in *Staples v. CBL & Assocs.*, 15 S.W.3d 83 (Tenn. 2000):

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd*[], 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or exclusively establish

-4-

an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the [nonmoving] party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley*[], 960 S.W.2d at 588; *Robinson*[], 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the [nonmoving] party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson*[], 952 S.W.2d at 426; *Byrd*[], 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples*, 15 S.W.3d at 88-89 (footnote omitted).

### Defendant Bayliffs

As discussed, the trial court granted summary judgment in favor of the Bayliffs "as to tort actions based upon deceit or misrepresentation, intentional or negligent" (per section 552 of the Restatement (Second) of Torts), as well as the claim of violation of the TRPDA, based upon the statute of limitations. The Patel's remaining claim for fraudulent misrepresentation/concealment was disposed of by the trial court's order of January 2, 2002 granting the Bayliff's motion for reconsideration on the rescission issue. As the Appellant frames the issue simply as "whether the trial court erred in granting summary judgment to the defendant, Bayliffs[,]" we shall address the propriety of the grant of summary judgment as it applies to each of Appellants underlying allegations.

### Rescission

While it is not entirely clear from the trial court's order, it appears that the court denied the Bayliffs' initial motion for summary judgment "on the action for rescission" based on a finding that the termite letter at issue may have been relied upon by the Patels. Specifically, the court found that

[t]hese papers were delivered to the attorney who apparently acted for both the lending institution and the purchasers, and were reviewed by him. Though his testimony is not clear, it appears that he considered the language quoted and relied

upon it. Relying upon his assurance that the papers were in order, the purchasers accepted the deed and completed the closing.

In the order granting the Bayliffs' supplemental motion for reconsideration, the court found that after further discovery "it is clear from the record that the attorney representing the plaintiffs at the closing . . . did not rely upon the alleged misrepresentations by the defendant Bayliff. . . . Therefore, the essential element of reliance is missing from the action for fraud. Without reliance there can be no fraud. *Merritt-Chapman & Scott Corp. v. Elgin Coal*, 358 F. Supp 17 (E.D. Tenn. 1972)."

After a thorough review of the record, we agree with the trial court that the closing attorney, and therefore the Patels, did not rely on Mr. Bayliff's representation, as evidenced by the termite letter, that he had disclosed all prior termite history before closing on the home. As part of the closing Mr. Bayliff checked a box and signed a standard form. While it is true that the closing attorney testified that he would have notified the Patels of anything he noticed on the form that was out of the ordinary, or that he had never seen before, Mr. Bayliff's checking of the box and signing of the form do not fall within either category. We, therefore, affirm the grant of summary judgment as to the claim of fraudulent misrepresentation.

This does not end our analysis, however, for in Tennessee "a party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentations." *Macon County Livestock Mkt. Inc. v. Ky. State Bank, Inc.*, 724 S.W.2d 343, 349 ( Tenn. Ct. App. 1986) (citations omitted). The *Macon* court goes on to cite with approval Restatement (Second) of Torts § 551 (1) (1976), which provides that

> [o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

*Macon County,* 724 S.W.2d at 349.

Accordingly, liability for non-disclosure arises only in cases where the party being held responsible "had a duty to disclose the facts at issue." *Id.* The transaction at issue in the present case is the sale of real property. Our Tennessee Supreme Court has, in a case involving the sale of real property, held that a seller has a duty to disclose "a fact of controlling importance in determining the desirability and value of that residence" that would not be apparent to the buyer through the exercise of ordinary diligence. *Simmons v. Evans*, 206 S.W.2d 295, 296 (Tenn. 1947).

The **Simmons** case involved the sale of a home which, unknown to the buyers, lacked water service from 7 p.m. to 7 a.m. every day. The sellers were fully aware of this fact and also the effect such knowledge would have on a potential buyer.[4] The **Simmons** court specifically held that where a seller "knew [the buyers] to be unaware of [a] material fact. They were, therefore, duty bound to disclose this fact unless common observation or such inquiry as the exercise of ordinary prudence required would have furnished such information." **Id.** at 297. In the present case it is obvious that common observation and ordinary diligence did not furnish evidence of prior termite infestation or treatment, as the Patels made visual inspections of the home and also paid others to perform more extensive inspections, none of which disclosed the home's termite history.

As noted, liability can only attach if the non-disclosure or concealment concerns a material fact. This court has opined that

> [a] statement is material or involves a material fact if it will likely affect the conduct of a reasonable person. 2 F. Harper, F. James & O. Gray, The Law of Torts § 7.9 (2d ed. 1986); 12 S. Williston, A Treatise on the Law of Contracts § 1515C (3d ed. 1970). Accordingly, a matter is material if
>
> (a) a reasonable [person] would attach importance to its existence or non-existence in determining his [or her] choice of action in the transaction in question; or
>
> (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his [or her] choice of action, although a reasonable [person] would not so regard it.

**Lowe v. Gulf Coast Dev., Inc.**, No. 01-A-01-9010-CH-00374, 1991 Tenn. App. LEXIS 860, at *22-23 (Tenn. Ct. App. Nov. 1, 1991)(**no perm. app. filed**)(alterations in original) (quoting Restatement (Second) of Torts § 538(2) (1976)).

We believe that, in this case, the existence of prior termite damage meets the definition of "material." This conclusion is supported by the statement, which Mr. Bayliff signed, contained on the termite letter which states:

> This report is integral to, and a necessary part of the inspecting company's full disclosure as to the scope and inherent limitations of the inspection and the report of findings. It is most important that the interested parties acknowledge this advice. The Seller hereto agrees that all known property history information regarding WDI

---

[4]When asked by the buyers why they had not disclosed this fact, the sellers stated "because we knew that you would not buy the property if we told you." **Simmons**, 206 S.W.2d at 286.

infestation, damage from infestation, and treatment history has been disclosed to the Buyer.

Mr. Bayliff signed the form attesting that he had disclosed all known property information regarding WDI infestation. Mr. Bayliff's signature on this document evidences his acknowledgment that prior termite history was a fact material to the transaction at hand. While it is not entirely clear upon what grounds the action for rescission was denied, for the foregoing reasons we reverse the trial court's grant of summary judgment insofar as it relates to an action premised upon fraudulent concealment.

### *Tennessee Residential Property Disclosure Claims*

Additionally, the Appellants' claims based upon the Tennessee Residential Property Disclosures Act (TRPDA) were dismissed because the court held that the Appellants failed to file within the time allowed by the applicable statute of limitations. However, the statute of limitations may be tolled under certain specific circumstances, including cases of fraudulent concealment. ***See Soldano v. Owens-Corning Fiberglass Corp.***, 696 S.W.2d 887, 889 (Tenn. 1985) (stating that "[m]ere ignorance and failure of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations. There is an exception to this rule. Fraudulent concealment of the cause of action by the defendant tolls the statute of limitations. It begins to run as of the time of the discovery of the fraud by the plaintiff.") Accordingly, insofar as the TRPDA claims relate to the claim of fraudulent concealment, the grant of summary judgment is reversed.

### *Negligent/Intentional Misrepresentation*

The trial court granted the Bayliffs' motion for summary judgment as to the allegations of misrepresentation, both negligent and intentional, apparently because the Patels had failed to prove damages. The Patels requested a clarification as to the reason for the grant of summary judgment as well as a reconsideration of the ruling. No clarification was forthcoming, and the court finalized its grant of summary judgment as to these claims in its order dated January 2, 2002, wherein the court stated that

> this court previously found that defendants Bayliff were entitled to summary judgment on the plaintiffs' tort actions based upon deceit or misrepresentation, intentional or negligent, on the basis that damages are an essential element of the non-movant's claim and the plaintiffs had produced no evidence that there were active termites in the house or visible termite damage to the property at the time of the contract and closing on the subject property. Defendants presented proof in the form of the plaintiff's deposition testimony as well as the exhibits to his deposition, including the termite report, the home inspection report, the stucco inspection report and the appraisal of the property, all of which affirmatively supported defendant Bayliffs' position that there were no active termites in the house or visible termite

damage to the property at the time of the closing. According to the plaintiff, he did not observe any active termites in the house until the end of December, 1998 or early January 1999, over 7 months following the closing of the property on June 3, 1998. Moreover, the affidavit of Dave Allen that was recently filed by the plaintiffs states that the plaintiffs discovered termites in the home on or about April of 1999, over 11 months after closing.

The trial court apparently found that the Bayliffs, as the moving party, had affirmatively negated the essential element of damages of the Patels' claim. *See McCarley*, 960 S.W.2d at 588; *Robinson*, 952 S.W.2d at 426. Accordingly, under our summary judgment standard, the burden shifted to the Patels to offer proof of damages. In an attempt to meet this burden the Patels offered the affidavits of Dave Allen and Carol Lott. We turn first to the deposition of Carol Lott. Concerning her testimony, the trial court stated that

> [t]he court finds that Ms. Lott's deposition testimony that the subject property "might" have a diminution in value and that she "doesn't know" what that diminution will be is insufficient to create an issue of disputed material fact. As a result the plaintiffs have failed to rebut defendant Bayliffs affirmative showing of the plaintiffs' lack of the essential element of damages.

We disagree. Ms. Lott maintained throughout her deposition that the forms provided to the Patels were not completed properly and stated that "[i]f it [the previous termite treatments and damage] had been disclosed, *there would be no question of marketability*[,]" and that "[t]he form is not filled out properly, and *it would have affected the marketability* had it been filled out properly. . . ." Ms. Lott also gave the following testimony as to marketability of the home:

Q:     In other words, it's your opinion that if there was ever any kind of termite activity on the property that that affects the marketability of the property?

A:     *I do believe that, yes, sir.*

. . . .

Q:     . . . . In other words, just based on that information, [referring to the TRPD form and the termite letter] would you agree that there is no affect on the marketability based on the information that you have?

A:     No, I would not agree with that. If me, the buyer, or me, the buyer's agent, had known about the termite damage, I may not have bought the house because I would have been scared that when it got time to market the house again I would then have to disclose this prior termite damage that was not

disclosed to me. ***So would it affect the marketability of the house? Yeah.***

. . . .

Q:      But if there's no information about termites prior to closing, and the termite letter comes in and says that there's no visible - - and provides what the contract requires it to provide, which is no visible activity and no damage, then what's the effect on the marketability of this property at this point in time?

. . . .

A:      It goes back to what I've said. It's just disclosure. It now affects the marketability for the life of this house for the rest of its life. But marketability during March to June of '98, it was not affected because it was not disclosed. Had it been disclosed, it would have affected the marketability of this property.

. . . .

Q:      As I understood you to say, it did not affect it at that time?

A:      Because it was not disclosed.

Q:      What is the effect? What's the effect you're talking about?

A:      The greatest effect is going to be that anybody that looks at this house, their agent is going to have to be informed of the termite damage that it's previously had, and it is going to make it less desirable, therefore, ***making it less valuable***.

. . . .

Q:      I guess that's really what we're talking about is the fact that there's a possibility that the marketability of the house could be affected, is that what you are saying?

. . . .

Q:      Is that a fair statement?

A:      No. The marketability *is* affected if there's been undisclosed termite damage.

Our summary judgment standard requires that once the moving party successfully negates a claimed basis for the action that the non-moving party must offer proof to establish the existence of the essential elements of the claim. Ms. Lott's testimony is that had the prior termite damage been disclosed, the home would have been less valuable. The testimony further establishes that the all future sales of the home will be affected by the fact of previous termite treatment. "Uncertain . . . damages are prohibited only when the existence of damage is uncertain, not when the amount is uncertain. When there is substantial evidence in the record and reasonable inferences may be drawn from that evidence mathematical certainty is not required." *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 72 (Tenn. Ct. App. 2000) perm. app. denied (Tenn. Mar. 12, 2001) (quoting *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983)). "[T]he law does not require exactness of computation in suits that involve questions of damages growing out of contract or tort." *Id.* Accordingly, although Ms. Lott did not quantify the effect the prior termite damage would have on the value of the property, she does supply proof of the existence of damages, which is sufficient to survive a motion for summary judgment.

We now turn to the affidavit of Mr. Allen. In its grant of summary judgment the trial court cites the fact that the "the plaintiffs had produced no evidence that there were active termites in the house or visible termite damage to the property at the time of the contract and closing on the subject property." In this same order the court refers to the "affidavit of Dave Allen that was recently filed by the plaintiffs[.]" We note, however, that there was a prior affidavit of Mr. Allen submitted by the Patels which is not referred to in the court's order. This affidavit states the following: "Given the frequency and timing of Germantown Termite and Pest Control's treatment of 3450 Lake Pointe Cove, it would appear that Germantown failed to completely eliminate the presence of all live termites at 3450 Lake Pointe Cove." Mr. Allen further states that "[g]iven the frequency and timing of the evidence of visible termite infestation, I am of the opinion that, more probably than not, live termites were present on June 3, 1998, the date of closing." These statements evidence the existence of a disputed, material fact; specifically, whether there were termites present in the home on either the date of the inspection or the date of closing. Accordingly, insofar as the granting of the motion for summary judgment was related to the Patel's failure to "produce[] . . . evidence that there were active termites in the house or visible termite damage to the property at the time of the contract and closing on the subject property[,]" it is reversed.

### Defendant Germantown Termite and Pest Control

The trial court granted GTPC's motion for summary judgment on the issue of negligent misrepresentation by an order dated December 7, 2001. In the order the trial court stated that "[f]urther discovery has been taken, and it is clear from the record that the attorney who was

arguably handling the plaintiffs' interests at the closing of the sale of the property in question did not rely upon the alleged misrepresentations by [Germantown Termite and Pest Control]." After a thorough review of the record, however, we disagree.

The Patel's closing attorney provided the following deposition testimony concerning the effect of GTPC's failure to note, on the termite letter, prior treatments which they had performed on the subject property:

> A:  I would not have disbursed funds without him [Dr. Patel] knowing everything that was on the termite letter. And he would have had the chance to have known that was there had it been there.
>
> . . . .
>
> Q:  . . . . So you mean before you sent the checks out to Mr. Bayliff and Mr. Bayliff's attorney, you would have talked to Dr. Patel on the phone and said, Everything looks okay?
>
> A:  And the reason I would have said that is because that's the one thing we did not have when we closed, and I told him that I could not disburse funds without a clean termite letter. And, of course, nobody wants to buy a house without a clean termite letter. So he was probably anxious to know.
>
> Q:  Right. But then, I guess, that begs the question which Mr. Goldin is going to be anxious to ask you, and that is, since the history versus active termite infestation was not critical to your closing, is that something which you would have related to Dr. Patel if it had been reflected, the termite history?
>
> A:  The fact that I've never seen it – attached to a termite letter, any kind of history of termites ever in hundreds and hundreds and hundreds of closings – and I'm sure maybe another lawyer has, but the fact that I've never seen anything like that attached, *it would have drawn a red flag to me to be able to at least say, Look, there's some additional information here that said they had termites, this, that, and the other.* **I would have definitely brought that up.**

Additionally, Dr. Patel stated in an affidavit that it was his understanding that the funds for the closing on the home would not be released absent a termite letter reflecting no current, or previous, termite problems. Accordingly, when he received word from his closing attorney that the termite letter looked fine, he took this as assurance that the home had no current or previous termite damage and did not take steps at that time to prevent the release of the funds.

We find that this testimony creates a genuine issue as to whether the Patels' closing attorney relied upon the termite letter in closing on the home. Accordingly, the grant of summary judgment for the Defendant, GTPC, on the action for negligent misrepresentation, is reversed.

### *Conclusion*

For the foregoing reasons we reverse the grant of summary judgment for the Defendant Bayliffs as to the issues of fraudulent concealment, as well as negligent and intentional misrepresentation. We affirm the summary judgment against the Patels as to the issue of fraudulent misrepresentation. We further reverse the grant of summary judgment in favor of GTPC on the issue of negligent misrepresentation. We remand the cause for further proceedings not inconsistent with this opinion. We tax one-half of the cost of this appeal to the Appellees Douglas and Tommie Bayliff, and one-half to Germantown Termite and Pest Control, for which execution, if necessary, may issue.

_____
DAVID R. FARMER, JUDGE