IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 9, 2008

## LARRY BIELFELDT. v. DON TEMPLETON and RUBY TEMPLETON

Direct Appeal from the Chancery Court for Robertson County
No. 19667    Laurence M. McMillan, Chancellor

No. M2008-01093-COA-R3-CV - Filed February 18, 2009

This case arises from a dispute over a contract for the sale of land. In the contract, Appellee Sellers made no warranty concerning the exact acreage of the tract. Appellant Buyer was given the right to have the tract inspected and surveyed prior to closing; however, he did not exercise that right. At the closing, Appellant also executed a waiver to any claims arising from a determination that the assumed acreage was incorrect. A survey performed after the closing indicated that the tract was approximately three acres less than the parties thought. Appellant Buyer brought suit against Appellee Sellers on grounds of fraudulent misrepresentation. Finding no error, we affirm.

Tenn R. App. P. 3 Appeal as of Right ; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and Holly M. Kirby, J., joined.

Homer R. Ayers, Goodlettsville, TN, for the Appellant

Jerome Michael Converse, Springfield, TN, for the Appellees, M. Don Templeton, Ruby Templeton

## OPINION

Appellees Don and Ruby Templeton were the owners of the disputed tract of land, located in Robertson County. The Templetons obtained the tract from Mr. Templeton's mother by deed dated May 20, 1979. The deed contains four parcels, described in metes and bounds, and six exclusions. The tax map indicates that this tract is approximately 15.31 acres. In 2004, an adjoining property owner, Larry Joe Meador, acting on behalf of the Appellant Larry Bielfeldt, contacted the

Templetons about purchasing the 15.31 acre tract. Mr. Templeton ultimately agreed to sell the tract for $20,000 per acre.

At the time he agreed to purchase the tract, Mr. Bielfeldt had neither viewed the tract, nor spoken with the Templetons. Nonetheless, on or about December 13, 2004, the parties entered into an Agreement of Sale (the "Contract"). Because there was some uncertainty as to the exact acreage of the tract, the parties used the 15.31 acres from the tax map to negotiate the total purchase price. In the Contract, the Templetons made no warranty as to actual acreage, but granted Mr. Bielfeldt the opportunity to have the property surveyed prior to closing.

On or about December 13, 2004, the parties entered into an Agreement of Sale (the "Contract"). The tract was described in Exhibit A to the Contract. However, in that exhibit, the Templetons expressly made no warranty as to the actual acreage being sold, to wit:

> It is believed that the property described below is approximately 15.3 acres, however, no warranty is made with regard to the exact amount of land herein conveyed and the same may be more or less than 15.3 acres the risk of any such difference is assumed by the grantee [i.e., Mr. Bielfeldt] pursuant to the contract.

Section 8 of the Contract provides for a due diligence period, and reads, in relevant part, as follows:

> **8.1 Due Diligence Period**. Buyer [i.e., Mr. Bielfeldt] shall have sixty (60) days after the date of this Agreement in which to inspect the property and perform any and all inspections, surveys, or appraisals contemplated by this Agreement. However, upon written consent of the parties, this due diligence period may be extended.
>
> **8.2 Condition of Property**. Subject to the specific representations and warranties given by Seller to Buyer under this Agreement, it is understood that the Property being purchased is being purchases on an "AS-IS" and "WHERE-IS" basis and will be inspected by Buyer or Buyer's duly authorized agent, with no warranties as to the condition or use thereof.

Mr. Bielfeldt did not exercise his right to have the tract surveyed, and the closing was completed by mail sometime in May, 2005. As part of the closing, Mr. Bielfeldt executed a "Survey Waiver Acknowledgment." This Waiver reads, in relevant part, as follows:

> Larry Bielfeldt hereby expressly waives the right to have the subject property surveyed prior to Closing and in doing so, understands that in the event a survey in accordance with the Agreement had indicated

less acreage than the 15.31 acres indicated on the contract and the tax map, then the sales price would have been adjusted based upon the difference. Larry Bielfeldt expressly agrees that in the event a later survey were to determine that the property contains less acreage, he shall have no claim against Don Templeton and wife Ruby Templeton for any credit or reduction in the sales price of $306,200.00 to be paid by the Undersigned at closing.

Further, Don Templeton and wife Ruby Templeton waive any right they may have to charge Larry Bielfeldt a higher price if the survey had indicated more than 15.31 acres.

This agreement shall be considered a modification of the Agreement of Sale and shall be binding upon the respective parties, and their successors and assigns.

Also in connection with the closing, Mr. Bielfeldt executed a Notice and Waiver, in which he was advised of his right to purchase an Owner's Title Insurance Policy on the tract, and waived same.

Approximately three months after the closing, on or about August 25, 2005, Mr. Bielfeldt had the property surveyed. The surveyor determined that the acreage contained in the tract was actually 12.86 acres. Mr. Bielfeldt notified the Templetons of the discrepancy in acreage. This was actually the first time that Mr. Bielfeldt and the Templetons had spoken. The Templetons stated their belief that there was an error on the property description based upon tract 1 having been sold many years prior by a family member. According to the Templetons, if this was the case, said sale had taken place prior to their gaining ownership from Mr. Templeton's mother. The Templetons attempted to correct the original deed by having a Deed of Correction prepared, which excluded tract 1 from the original deed. This Deed of Correction was recorded on or about March 13, 2006.

On March 6, 2007, Mr. Bielfeldt filed a Complaint in the Robertson County Chancery Court against the Templetons. The Complaint seeks treble damages in the amount of $146,400.00 due to allegations of fraud on the part of the Templetons. Mr. Bielfeldt also asked the court to reform the deed to reflect the property description made by Mr. Bielfeldt's surveyor. The Templetons answered the complaint on July 23, 2007, denying the material allegations contained therein and raising, as affirmative defenses, failure to state a claim, waiver of survey, assumption of the risk, and the lack of a warranty. Based upon these defenses, the Templetons asked the court to dismiss Mr. Bielfeldt's complaint.

The matter was heard on April 15, 2008. On April 17, 2008, the trial court entered an Order of Dismissal, dismissing Mr. Bielfeldt's complaint. He appeals. Upon review of the record, this Court determined that the April 17, 2008 Order was not final because it did not adjudicate Mr. Bielfeldt's request for reformation of the deed. This Court entered a show cause order, which was

answered by the filing of a supplemental "Amended Order of Dismissal," which denies Mr. Bielfeldt's request. Finding that the order appealed is now final, we address the issues raised by Mr. Bielfeldt, as stated in his brief:

> 1. Whether the land sold by the Appellees to the Appellant was a sale in gross or a sale by the acre.
> 2. Whether we should look to the Contract for the Sale of Land or the deed in determining the intention and the rights of the parties.
> 3. Whether a property description in a Contract for the Sale of Land submitted by the Appellees to the Appellant, that erroneously includes the description of a 25 acre tract which was never owned by the Appellants, and is located across the road from the property sold, constitutes fraud on the part of Appellees.
> 4. Whether the "benefit of the bargain" rule is applicable for actual damages in a fraudulent misrepresentation suit.
> 5. Whether punative damages should apply in the case of a fraudulent misrepresentation by the Appellees.
> 6. Whether a series of disclaimers will excuse fraudulent behavior.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. ***See*** Tenn. R. App. P. 13(d).

In the instant case, the parties contracted for the sale of this land. Mr. Bielfeldt has not alleged that the contract, or any subsequent waiver or agreement, is ambiguous. From our review, we agree. Consequently, in order to overcome the contract, Mr. Bielfeldt asserts that the Templetons are guilty of fraudulent misrepresentation concerning the acreage.

To establish a claim for fraudulent misrepresentation in inducement of a contract a party must show: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from reliance. ***See, e.g., Lonning v. Jim Walter Homes, Inc.***, 725 S.W.2d 682 (Tenn. Ct. App. 1986).[1] In the sale of real property, a fact or condition is considered "material" if it is one of "controlling importance in determining the desirability and value of the [property]." ***Patel v. Bayliff***, 121 S.W.3d 347 (Tenn. Ct. App. 2003). The Defendant has a duty to disclose such a fact or condition "unless ordinary diligence would have revealed the undisclosed fact." ***Lonning***, 725 S.W.2d at 685.

---

[1] The Tennessee Supreme Court accepted use of the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" interchangeably because it considered the terms synonymous. ***Concrete Spaces, Inc. v. Sender***, 2 S.W.3d 901, 904 (Tenn.1999).

From the inception of their dealings with Mr. Bielfeldt (or his agent), the Templetons never asserted that they knew the exact acreage of the tract. Because they were not certain of the exact acreage, the Templetons specifically made no warranty, and gave Mr. Bielfeldt the right to inspect and/or survey the tract before the closing. In short, it is apparent from the record that the Templetons were uncertain as to the exact acreage, and that they disclosed this fact from the beginning. Consequently, despite the fact that the tract was ultimately determined to be less than 15.31 acres, at the time of the contract, there is no evidence that the Templetons had knowledge of that fact. Moreover, because of the specific clause of the parties' agreement allowing Mr. Bielfeldt to perform his own due diligence in ascertaining the exact acreage, there is no indication that the Templetons were trying to hide the anything. espite the fact that Mr. Bielfeldt was free to have the tract surveyed, and despite the Templetons' agreement to modify the price accordingly, Mr. Bielfeldt did not avail himself of this right until after the closing. A person who knows the danger, appreciates the danger, and voluntarily exposes himself or herself to the danger is deemed to have assumed the risk of the injury he or she incurs. *See, e.g., Gann v. International Harvester Co.*, 712 S.W.2d 100 (Tenn. 1986). Under Tenn. R. Civ. P. 8.03, express assumption of the risk is a complete defense to liability. In not exercising his right to have the tract surveyed prior to the closing, Mr. Bielfeldt assumed the risk that the property contained less acreage.

Moreover, as set out above, Mr. Bielfeldt voluntarily signed a waiver of his right to bring a claim against the Templetons based upon actual acreage. Therein, Mr. Bielfeldt expressly agreed that, in the event a later survey revealed that the tract contained less acreage, he would have no claim against the Templetons for any credit or reduction of the sales price. Waiver is defined as the voluntary relinquishment or abandonment of a known right or privilege. *Felts v. Tennessee Consolidated Retirement System*, 650 S.w.2d 371 (Tenn. 1983). A party who, by express or implied waiver, has refrained from exercising or enforcing his or her rights in a matter may be equitably estopped from asserting a claim. *Chattem, Inc. v. Provident Life and Accident Ins. Co.*, 676 S.W.2d 953 (Tenn. 1994). Consequently, we conclude that Mr. Bielfeldt has waived the very relief he now seeks.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Larry Bielfeldt and his surety.

**J. STEVEN STAFFORD, J.**