CROSSLEY CONSTRUCTION
CORPORATION

v.

NATIONAL FIRE INSURANCE
COMPANY OF HARTFORD.

Court of Appeals of Tennessee,
Eastern Section, at Knoxville.

Nov. 9, 2006 Session.

March 16, 2007.

Permission to Appeal Denied by
Supreme Court Aug. 13, 2007.

Richard D. Plumley, Knoxville, Tennessee, for the Appellant, Crossley Construction Corporation.

James L. Werner and Michael E. Kozlarek, Columbia, South Carolina and Dan D. Rhea, Knoxville, Tennessee for the Appellee, National Fire Insurance Company of Hartford.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and SHARON G. LEE, JJ., joined.

Crossley Construction Corporation ("Plaintiff") sued National Fire Insurance Company of Hartford ("Defendant") and Sequatchie Concrete Service[1] for claims related to a payment and performance bond issued by Defendant for construction of a residence hall for Western Carolina University ("WCU Project"). Defendant filed a motion for summary judgment, which the Trial Court granted. Plaintiff appeals claiming that the Trial Court erred in granting summary judgment on its promissory fraud claim, its claim for punitive damages for the promissory fraud, and its claim under the Tennessee Consumer Protection Act of 1977, Tenn.Code Ann. § 47–18–101, *et seq.* We affirm.

### *Background*

Plaintiff and Defendant executed a General Agreement of Indemnity ("2001 GAI") on October 2, 2001, that provided, in pertinent part:

2. [Plaintiff] will indemnify and save [Defendant] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Defendant] may pay or incur in consequence of having executed, or procured the execution of such bonds, or any renewals or continuations thereof or substitutes therefore, . . . . In the event [Defendant] deems it necessary to make an independent investigation of a claim, demand or suit, [Plaintiff] acknowledge[s] and agree[s] that all expense attendant to such investigation is included as an indemnified expense. In the event of payments by [Defendant], [Plaintiff] agree[s] to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of [Plaintiff's] liability therefore to [Defendant].

\* \* \*

5. [Defendant] shall have the exclusive right to determine for itself and [Plaintiff] whether any claim or suit brought against [Defendant] or the principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon [Plaintiff].

\* \* \*

10. [Plaintiff] understand[s] and agree[s] that the circumstances, financial or otherwise, of any one or more of [Plaintiff] may change substantially over the period of this Agreement and [Plaintiff] therefore agree[s] to keep themselves fully informed as to the business activities and financial affairs of any one or more of [Plaintiff] and of the risks being engaged in so that [Plaintiff] are always aware of the risks or hazards in continuing to act as Indemnitors. [Plaintiff] hereby expressly waive[s] any notice from [Defendant] of any fact or information coming to the notice or knowledge of [Defendant] affecting its rights or the rights or liabilities of [Plaintiff].

\* \* \*

12. [Defendant] is not required, by reason of any applications for a bond or by reason of having issued a previous bond or bonds or otherwise, to execute or procure the execution of or participate in the execution of any such bond or bonds and [Defendant] at its option, may

---

1. An Order of Compromise and Dismissal as to Sequatchie Concrete Service and Ross Bryan Associates, Inc. was entered on August 31, 2005, dismissing Plaintiff's claims against these parties with prejudice. These parties are not involved in this appeal.

decline to execute or to participate in or procure the execution of any such bond without impairing the validity of this Agreement. [Plaintiff] understand[s] and agree[s] that other than for the entity issuing a bond, no other entity included within the definition of the "Company" in this Agreement assumes any obligation whatsoever with respect to either this Agreement or such bond.

\* \* \*

17. [Plaintiff] understand[s] and agree[s] that this document is a continuing agreement to indemnify over an indefinite period and that bonds and undertakings issued by [Defendant] pursuant to this Agreement may vary widely in amounts and nature and that [Plaintiff] will be bound by all such bonds and undertakings, and any increases in the penal limits of such bonds and undertakings.

Defendant issued a payment and performance bond relating to a contract Plaintiff had for construction of the WCU Project. During construction of the WCU Project, Plaintiff allegedly identified design defects with the WCU Project. Western Carolina University and Plaintiff apparently reached an impasse, and Western Carolina University terminated Plaintiff's contract. Defendant undertook an investigation of the termination and chose under the bond issued by Defendant to complete the WCU Project using another contractor.

In August of 2003, Plaintiff and Defendant executed another separate General Agreement of Indemnity ("2003 GAI"). In the 2003 GAI, Hogue and Cynthia Crossley were added in their personal capacity as indemnitors along with Plaintiff.

In December of 2003, Plaintiff sued Defendant regarding the general indemnity agreements claiming, among other things, that Defendant had breached its duty of good faith, committed fraud, and violated the Tennessee Consumer Protection Act of 1977. Plaintiff sought, among other things, a declaration of its rights under the indemnity agreements and punitive damages. Plaintiff claimed, in part, that Defendant's investigation of the WCU Project and Defendant's treatment of Plaintiff prevented Plaintiff from obtaining bonds for future projects thereby harming Plaintiff's business and reputation. Defendant answered the complaint and filed a counterclaim seeking, in part, to recover from Plaintiff for alleged liabilities, losses, costs, damages, etc., with reference to the general indemnity agreements.

The Trial Court granted Plaintiff leave to file an amended complaint ("Amended Complaint"). In the Amended Complaint, Plaintiff alleged, among other things, that Defendant committed promissory fraud in connection with the execution of the 2003 GAI and that Defendant had violated the Tennessee Consumer Protection Act of 1977, with regard to its investigation of the WCU Project termination.

Defendant filed a motion for summary judgment. By order entered February 2, 2006, the Trial Court granted Defendant's motion for summary judgment and made the judgment final pursuant to Tenn. R. Civ. P. 54.02.

Prior to oral argument before this Court, Plaintiff made both a written and an oral motion to strike Defendant's brief, which included proposed supplemental records in its appendix in contravention to the Trial Court's November 3, 2006 order denying Defendant's motion to certify a supplemental record. This Court granted the motion, in part, striking the supplemental records, and the proposed supplemental records were not considered by this Court in rendering the decision in this appeal.

## Discussion

Although not stated exactly as such, Plaintiff raises three issues on appeal: 1) whether the Trial Court erred in granting summary judgment on Plaintiff's promissory fraud claim; 2) whether the Trial Court erred in granting summary judgment on Plaintiff's claim for punitive damages for the promissory fraud; and, 3) whether the Trial Court erred in granting summary judgment on Plaintiff's claim under the Tennessee Consumer Protection Act of 1977, Tenn.Code Ann. § 47–18–101, *et seq.*

In *Teter v. Republic Parking Sys., Inc.,* our Supreme Court reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment. *Teter v. Republic Parking Sys., Inc.,* 181 S.W.3d 330 (Tenn.2005). The Court stated:

> The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.,* 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993). In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn.2000). And because this inquiry involves a question of law only, the standard of review is de novo with no presumption of correctness attached to the trial court's conclusions. *See Mooney v. Sneed,* 30 S.W.3d 304, 306 (Tenn.2000); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Id.* at 337.

■ We first will consider whether the Trial Court erred in granting summary judgment on Plaintiff's promissory fraud claim. The Trial Court granted summary judgment as to Plaintiff's promissory fraud claim raised in the Amended Complaint. In the Amended Complaint, Plaintiff pled that Defendant committed promissory fraud in connection with the execution of the 2003 GAI. However, on appeal, Plaintiff claims and argues that Defendant committed fraud in connection with Defendant's actions that occurred in 2001, when Plaintiff allegedly was "induced to leave its prior surety relationship of nine (9) years standing. . . ." Plaintiff claims on appeal that it relied upon assurances made by Defendant when executing the 2001 GAI, including promises that Defendant would reasonably and fairly conduct an independent investigation of any indemnity claim, and that Defendant failed to conduct a proper investigation in connection with the WCU Project.

The Trial Court granted summary judgment as to the promissory fraud claim raised in the Amended Complaint. The Amended Complaint did not plead as promissory fraud any actions in connection with the execution of the 2001 GAI. Plaintiff's reply brief on appeal claims that Plaintiff made the argument before the Trial Court that:

> The worst thing that happened to [Plaintiff] is when [Defendant] solicited their business. They were fine with AIG. They had a longstanding relationship with AIG. [Defendant] went out of its way to solicit [Plaintiff's] business . . . Part of the process was . . . we have all these services . . . great claims administration. You come with us and we will treat you right.

While Plaintiff may have made this argument before the Trial Court, Plaintiff did not plead in the Amended Complaint that these alleged specific actions relating to the execution of the 2001 GAI constituted promissory fraud. Defendant's motion for summary judgment requested it be granted summary judgment on the specific claims, including the promissory fraud claim, raised by Plaintiff in the Amended Complaint, and that was the summary judgment granted by the Trial Court.

■ Except for some limited exceptions not applicable here, we will not consider issues, let alone claims, raised for the first time on appeal. *See City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn.2004) (noting the general rule that "questions not raised in the trial court will not be entertained on appeal." (quoting *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983))). Plaintiff did not raise as an issue, much less as a claim in the Amended Complaint before the Trial Court, that Defendant's actions in 2001, related to the 2001 GAI constituted promissory fraud. Given this, we affirm the Trial Court's grant of summary judgment on Plaintiff's promissory fraud claim.

As we have affirmed the Trial Court's grant of summary judgment on Plaintiff's promissory fraud claim, Plaintiff's claim for punitive damages arising out of the alleged promissory fraud must fail. We need not address this issue further.

■ We next address whether the Trial Court erred in granting summary judgment on Plaintiff's claim under the Tennessee Consumer Protection Act of 1977, Tenn.Code Ann. § 47–18–101, *et seq.* In pertinent part, the Tennessee Consumer Protection Act of 1977, provides:

**47–18–102. Purposes.**—The provisions of this part shall be liberally construed to promote the following policies:

* * *

(2) To protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state;

(3) To encourage and promote the development of fair consumer practices;

(4) To declare and to provide for civil legal means for maintaining ethical standards of dealing between persons engaged in business and the consuming public to the end that good faith dealings between buyers and sellers at all levels of commerce be had in this state;....

**47–18–103. Definitions.**—As used in this part, unless the context otherwise requires:

* * *

(2) "Consumer" means any natural person who seeks or acquires by purchase, rent, lease, assignment, award by chance, or other disposition, any goods, services, or property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated or any person who purchases or to whom is offered for sale a franchise or distributorship agreement or any similar type of business opportunity;

* * *

(10) "Services" means any work, labor, or services including services furnished in connection with the sale or repair of goods or real property or improvements thereto; and

(11) "Trade," "commerce," or "consumer transaction" means the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property, tangible or intangible, real,

personal, or mixed, and other articles, commodities, or things of value wherever situated; . . . .

**47–18–104. Unfair or deceptive acts prohibited.**—(a) Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices and are Class B misdemeanors.

(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

* * *

(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person; . . . .

Tenn.Code Ann. § 47–18–101, *et seq.* (2001).

In its brief on appeal, Plaintiff argues, in part, that "[Plaintiff] pledged its indemnity at the very beginning of the surety business relationship; therefore, [Plaintiff] had a right to expect that [Defendant] would refrain from unfair and deceptive practices in the independent investigation of any subsequent claim which could put [Plaintiff's] indemnity in jeopardy." Plaintiff claims, among other things, that Defendant "conducted a flawed independent investigation [of the WCU Project termination] . . . ," concealed reports and findings from Plaintiff, and failed to disclose numerous things to Plaintiff, and that a reasonable person could find, based upon these facts, that Defendant engaged in unfair or deceptive practices. In essence, Plaintiff argues that "[t]he failure of [Defendant] to support [Plaintiff's] position on the WCU Project, while simultaneously concealing all findings supportive of [Plaintiff], cast a pall on [Plaintiff's] business reputation and good will such that no other sureties were willing to issue per-

formance bonds to [Plaintiff]," who thus was damaged.

Unfortunately for Plaintiff, the acts complained of were not acts "affecting the conduct of any trade or commerce . . . ," Tenn.Code Ann. § 47–18–104(a) (2001), under the statute because none of Defendant's actions complained of by Plaintiff were a part of "the advertising, offering for sale, lease or rental, or distribution of any goods, services, or property. . . ." Tenn.Code Ann. § 47–18–103(11) (2001). Defendant's actions that Plaintiff complains about in its Amended Complaint relative to its Tennessee Consumer Protection Act of 1977 claim were not connected with "the advertising, offering for sale, lease or rental, or distribution . . ." of any goods, services, etc., but instead occurred long after the 2001 GAI was entered into. Tenn.Code Ann. § 47–18–103(11) (2001). As these alleged acts occurred long after the 2001 GAI was executed, such alleged acts are relevant to a breach of contract claim and not a claim under the Tennessee Consumer Protection Act of 1977. The adoption of Plaintiff's position would result in virtually every breach of contract case coming under the umbrella of the Tennessee Consumer Protection Act of 1977, an intention clearly never intended by our General Assembly. No breach of contract claim is before us on appeal, and we decline to consider any such claim.

There are no genuine issues of material fact relative to Plaintiff's Tennessee Consumer Protection Act of 1977 claim, and Defendant is entitled to summary judgment as a matter of law. As such, the Trial Court correctly granted summary judgment on this claim.

Defendant argues that the Tennessee Consumer Protection Act of 1977, does not apply to this contract because it is a contract for indemnity. Given our holding that the Trial Court properly granted sum-

mary judgment to Defendant as to this claim on other grounds, it is unnecessary that we address this argument at this time.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Crossley Construction Corporation, and its surety.