IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 21, 2008 Session

**HERBERT JONES**
**v.**

**LEMOYNE-OWEN COLLEGE and CHERYL GOLDEN**

Appeal from the Circuit Court for Shelby County
No. CT-006315-04 Div IX     Robert L. Childers, Judge

No. W2008-00141-COA-R3-CV - Filed July 8, 2009

This is a breach of contract case. The plaintiff college professor was asked by his employer college to teach a summer class. The class was cancelled after the professor had taught only two class sessions. The college said that the class was cancelled due to low enrollment; this reason was disputed by the professor. The professor filed a lawsuit against the college for breach of express contract, breach of contract implied in fact, breach of contract implied in law, breach of the implied covenant of good faith and fair dealing, and intentional interference with contractual relations. The trial court granted summary judgment to the defendant college on all of the professor's claims. The professor appeals, arguing that he was denied discovery and that the grant of summary judgment was erroneous. We affirm the challenged discovery rulings and the grant of summary judgment as to the claims for breach of express contract, breach of contract implied in fact, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, and as to the claim for breach of contract implied in law with respect to the second class taught by the plaintiff. We reverse the grant of summary judgment as to the claim for breach of contract implied in law with respect to the first class taught by the plaintiff.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part,**
**Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Herbert Jones, Memphis, Tennessee, Plaintiff/Appellant, *pro se*

André C. Wharton, Memphis, Tennessee, for the Defendants/Appellees LeMoyne-Owen College and Cheryl Golden

## OPINION

### FACTS AND PROCEDURAL HISTORY

Plaintiff/Appellant Dr. Herbert Jones ("Dr. Jones") was hired by Defendant/Appellee LeMoyne-Owen College ("the College") in 2002 as an assistant professor in the Division of Social and Behavioral Sciences. During his time with the College, Dr. Jones was employed under two nine-month, tenure-track contracts and five short-term, non-tenure-track contracts.

Dr. Jones asserts that he entered into an oral agreement with the division chairperson, Dr. Margaret James, to teach a history class for the College's 2004 summer session.[1] Dr. Jones asserts that, in order for a class to "make," that is, continue for the entire session, the College's policy required five students to be enrolled on the first day of class. Dr. Jones insists that, on the first day of class, May 24, 2004, there were five students enrolled in his class. He asserts that, on the morning of May 24, the administrative assistant to the Division of Social and Behavioral Sciences, Ms. Clara Parker ("Ms. Parker"), notified him that his written contract to teach the summer session class was ready to be signed. Dr. Jones taught the first day of class; only one student was present. The next day, Dr. Jones asserts, Ms. Parker told him that she would bring the contract by his office for him to sign. However, later that afternoon, Ms. Parker called Dr. Jones to inform him that he would not be able to sign the contract. To learn the reason for this action, Ms. Parker allegedly said, he would need to speak to Dr. Cheryl Golden ("Dr. Golden"), who had recently been appointed the division chairperson. Dr. Jones alleges that he contacted Dr. Golden, who told him that she would not permit Dr. Jones to sign the contract to teach his summer class and in fact his class was going to be cancelled, despite the fact that five students were enrolled, because Dr. Jones was not performing any work on a project for the College's accreditation. After leaving Dr. Golden's office, Dr. Jones taught the second meeting of his history class, again with only one student in attendance. Thereafter, the class was cancelled. Dr. Jones taught no further classes during the 2004 summer session, and Dr. Jones apparently received no remuneration from the College for teaching the summer class.

On August 5, 2004, Dr. Jones filed a lawsuit against the College and Dr. Golden in the Shelby County General Sessions Court. The original complaint alleged implied contract and retaliation; Dr. Jones later amended the complaint to remove the retaliation claim. From the record, it appears that the General Sessions Court granted a motion to dismiss filed by the College and Dr. Golden. Pursuant to Tennessee Code Annotated § 27-5-108, Dr. Jones appealed the General Sessions dismissal of his claims to the Shelby County Circuit Court on November 1, 2004.

In the Circuit Court, Dr. Jones was permitted to amend his complaint to include claims for breach of express contract, breach of contract implied in fact, breach of contract implied in law, breach of the implied covenant of good faith and fair dealing, and intentional interference with contractual relations. In their answer, the Defendants denied Dr. Jones' allegations and asserted

---

[1] Because Dr. Jones is appealing a grant of summary judgment, for purposes of this appeal, we assume the truth of the facts alleged by the non-movant, Dr. Jones. *See Roberts v. Vaughn*, No. W2008-01126-COA-R3-CV, 2009 WL 1608981, at *1 n.1 (Tenn. Ct. App. June 10, 2009) (citation omitted).

several affirmative defenses. They claimed, *inter alia*, that Dr. Jones was an at-will employee and that the complaint should be dismissed because the condition precedent to the contract, requiring a sufficient number and type of students for the class to make, was not satisfied, thus preventing execution of the contract.

On March 3, 2006, Dr. Jones filed a motion to compel discovery. Among other things, he sought policy emails sent by administrators regarding the number of students that must be enrolled for a summer class to avoid cancellation. On April 7, 2006, the trial court denied Dr. Jones' motion to compel. On May 11, 2007, the College and Dr. Golden filed a motion to dismiss or in the alternative for summary judgment. On June 1, 2007, Dr. Jones filed several motions for more time to respond to the Defendants' summary judgment motion and to take depositions, and asking the trial court to set a discovery schedule. On June 18, 2007, Dr. Jones filed his response to the Defendants' motion to dismiss or in the alternative for summary judgment. On July 25, 2007, the trial court entered orders denying Dr. Jones' motions and granting the Defendants' motion for summary judgment. Dr. Jones filed a motion to alter or amend. On December 7, 2007, the trial court granted Dr. Jones' motion, and entered an amended order that granted the Defendants' motion for summary judgment and also included the reasoning for its decision. The trial court concluded that there were no material issues of fact in dispute with regard to Dr. Jones' express contract claim because he admitted that he never signed the contract. The court also concluded that there were no genuine issues of material fact with regard to the contract implied in fact claim because the employee handbook requires that there be an employment contract and there was no employment contract. Without explanation, the court concluded that there were no genuine issues of material fact in dispute with regard to the contract implied in law claim. Finally, the trial court concluded that there were no genuine issues of material fact in dispute concerning the claim for breach of the covenant of good faith and fair dealing or the claim for intentional interference with contractual relations because those claims require there to be a written contract and there was no written contract in this case. Dr. Jones then filed a timely notice of appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Dr. Jones raises eight issue for our review. We restate them below, consolidating the last two issues:

1. Whether the trial court erred in denying Dr. Jones' motion to compel discovery.
2. Whether the trial court erred in denying Dr. Jones' motion for a continuance to depose Dr. Margaret James.
3. Whether the trial court erred in granting the College's motion for summary judgment as to Dr. Jones' claim for breach of express contract.
4. Whether the trial court erred in granting the College's motion for summary judgment as to Dr. Jones' claim for breach of implied contract in fact.
5. Whether the trial court erred in granting the College's motion for summary judgment as to Dr. Jones' claim for breach of implied contract in law.

6. Whether the trial court erred in granting the College's motion for summary judgment as to Dr. Jones' claim for breach of the implied covenant of good faith and fair dealing.

7. Whether the trial court erred in granting the College's and Dr. Golden's motion for summary judgment as to Dr. Jones' claim for intentional interference with contractual relations.

A trial court's decisions concerning discovery are reviewed on appeal under an abuse of discretion standard. *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992). Decisions in matters of discovery will not be reversed absent a clear abuse of discretion. *Id.* (citing *Payne v. Ramsey*, 591 S.W.2d 434, 436 (Tenn. 1979)). A trial court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003) (quoting *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002)).

In reviewing a trial court's grant of summary judgment, the appellate court is to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000) (citation omitted). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Of course, the burden of persuasion in a motion for summary judgment rests with the moving party. *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). To prevail, the moving party must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citing *Staples*, 15 S.W.3d at 88; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). "If the moving party fails to make this showing, then 'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.' " *Id.* (quoting *McCarley*, 960 S.W.2d at 588).

In order to make the required showing and shift the burden to the nonmoving party, the party seeking summary judgment must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Id.* (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5). It is insufficient for the moving party to simply assert that the nonmoving party has no evidence or raise doubts about the nonmoving party's ability to prove the essential elements of the claim. *Id.* at 83–84 (citing *Byrd*, 847 S.W.2d at 215; *McCarley*, 960 S.W.2d at 588). Rather, the moving party "must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* at 84 (citing *Hannan*, 270 S.W.3d at 5). To negate an essential element of a claim, the moving party "must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn.

-4-

2004)). If the moving party does not make the required showing, then the motion for summary judgment fails. *Id.* (citing *Byrd*, 847 S.W.2d at 215).

On the other hand, "[i]f the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). The nonmoving party may satisfy his burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* (citing *McCarley*, 960 S.W.2d at 588). The evidence proffered by the nonmoving party must be accepted as true, and any doubts about the existence of a genuine issue of material fact must be resolved in favor of the nonmoving party. *Id.* (citing *McCarley*, 960 S.W.2d at 588). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id.* (quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.' " *Id.* (quoting *Byrd*, 847 S.W.2d at 215).

Because only questions of law are involved, we review a trial court's grant of summary judgment *de novo* with no presumption of correctness. *Id.* (citing *Blair*, 130 S.W.3d at 763). We review the evidence in the light most favorable to the nonmoving party, that is, Dr. Jones, and draw all reasonable inferences in his favor. *Id.* (citing *Staples*, 15 S.W.3d at 89).

## ANALYSIS

### Discovery Issues

Dr. Jones argues first that the trial court erred in denying his motion to compel discovery. As noted above, trial courts have broad discretion in matters of discovery. *Benton*, 825 S.W.2d at 416. Dr. Jones argues that the trial court abused its discretion by applying an incorrect legal standard when it denied his motion. *See Henry*, 104 S.W.3d at 479. Specifically, Dr. Jones argues that the trial court improperly denied his motion on the basis that the communications sought (policy emails) were made in anticipation of litigation.

The appellate record does not indicate the basis for the trial court's denial of Dr. Jones' motion to compel. The April 7, 2006 order denying the motion does not state the reason for the denial. The order references a hearing on Dr. Jones' motion, but the record does not include a transcript of the hearing.

It is the appellant's duty "to prepare [a] record which conveys a fair, accurate, and complete account of what transpired in the trial court regarding the issues which form the basis of the appeal." *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) (citing Tenn. R. App. P. 24). The record in this case contains nothing indicating that the trial court abused its discretion in denying Dr. Jones' motion to compel. Based on the record before us, we must presume that the trial court did not abuse its discretion. *See Burlew v. Burlew*, No. W2005-00526-COA-R3-CV, 2006 WL 26361, at *3 (Tenn. Ct. App. Jan. 5, 2006) (citing *In re M.L.D.*, 182 S.W.3d at 894–95).

Next, we address whether the trial court erred in denying Dr. Jones' motion for a continuance to depose Dr. Margaret James, the College division chair with whom Dr. Jones allegedly entered into an oral agreement to teach the summer class. Dr. Jones argues that he had insufficient time to conduct discovery prior to the trial court's ruling on the Defendants' motion for summary judgment. In support of his argument, Dr. Jones cites *Everett v. McCall*, No. E2000-02012-COA-R3-CV, 2001 WL 327918 (Tenn. Ct. App. Apr. 3, 2001).

In *Everett*, this Court reversed the trial court's grant of summary judgment in favor of the defendant because the plaintiff was given insufficient time in which to conduct discovery prior to the trial court's ruling on the defendant's summary judgment motion. We stated that

> after a moving party has established the absence of a genuine issue of material fact, "summary judgment is appropriate when the nonmoving party after being given a reasonable opportunity to establish its claims, *or after a sufficient time for discovery has elapsed*, is unable to demonstrate that he or she can indeed do so."

*Id.* at *2 (citing *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993)). In *Everett*, although the plaintiff failed to depose the defendant during the two to three year period in which the action was pending, the plaintiff "was not required to take any action other than normal trial preparation until the motion for summary judgment was filed, when the requirement . . . that the plaintiff must be given a sufficient time for discovery was triggered." *Id.* The defendant in *Everett* filed the motion for summary judgment on February 8, 2000, the plaintiff's Rule 56.07 response for a continuance to conduct discovery was filed on March 6, 2000, and the hearing on the motion for summary judgment was heard on March 17, 2000. *Id.* Under those circumstances, we found that the time from the filing of the motion for summary judgment to the hearing on the motion was not "sufficient time for discovery." *Id.*

In the present case, the Defendants filed the motion for summary judgment on May 11, 2007. Dr. Jones filed his Rule 56.07 motion for a continuance to take depositions on June 1, 2007, and the hearing on the motion for summary judgment was held on June 29, 2007. As with the plaintiff in *Everett*, even though the case had been pending for several years by the time the summary judgment motion was filed, Dr. Jones had a relatively short period of time during which to conduct discovery after the motion was filed.

However, there is an important distinction between *Everett* and the case at bar. In *Everett*, the defendant's summary judgment motion established that there was no genuine issue of material

fact, which the plaintiff was unable to rebut by affidavit. *Id.* In such a situation, it is in the trial court's discretion, under Rule 56.07, to determine whether to order a continuance to allow for additional discovery.[2] In this case, Dr. Jones argues that he should have been permitted to depose Dr. James in order to show that he and Dr. James entered into an oral contract to teach the class at issue. However, in his affidavit, Dr. Jones stated that he entered into an oral agreement with Dr. James. Therefore, regardless of whether Dr. James conceded such an oral agreement or disputed it, Dr. Jones' affidavit was sufficient for summary judgment purposes to demonstrate that a genuine issue exists as to that fact. Therefore, ordering a continuance to permit Dr. Jones to depose Dr. James would not have made a difference in the outcome of the summary judgment motion. Under these circumstances, we find that the trial court did not abuse its discretion in denying Dr. Jones' motion for a continuance to depose Dr. James.

### Contract Claims

Dr. Jones argues next that the trial court erred in granting summary judgment on his claim for breach of contract. In Tennessee, a contract can be express or implied, and can be either written or oral, but regardless, "an enforceable contract must result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, must be free from fraud or undue influence, not against public policy and must be sufficiently definite to be enforced." *Thompson v. Hensley*, 136 S.W.3d 925, 929–30 (Tenn. Ct. App. 2003) (quoting *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)). "A contract must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *Ziyad v. Estate of Tanner*, No. W2007-01683-COA-R3-CV, 2008 WL 4830872, at *6 (Tenn. Ct. App. Nov. 6, 2008) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The terms of the contract are sufficiently definite if they provide a basis for determining whether a breach has occurred and for giving an appropriate remedy. *Id.* (citing *Doe*, 46 S.W.3d at 196). Issues relating to contract formation are questions of law. *Murray v. Tenn. Farmers Assurance Co.*, No. M2008-00115-COA-R3-CV, 2008 WL 3452410, at *2 (Tenn. Ct. App. Aug. 12, 2008) (citations omitted).

---

[2] Tennessee Rule of Civil Procedure 56.07 provides as follows:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Tenn. R. Civ. P. 56.07.

In the present case, in support of their motion for summary judgment, the Defendants submitted affidavits from Dr. Golden and other College employees, stating that, although a written contract was prepared for Dr. Jones to sign, no written contract was ever executed because the requisite number of students had not enrolled in, paid for, and attended Dr. Jones' class. Thus, the Defendants established in their motion that there was no genuine issue of material fact with regard to the alleged written contract. At that point, the burden shifted to Dr. Jones to proffer evidence showing that there was a genuine issue of material fact as to the written contract. *See Martin*, 271 S.W.3d at 83–84. In his affidavit, however, Dr. Jones conceded that he never executed a written contact to teach the course at issue. Rather than offering him a written contract to sign, Dr. Jones said, Dr. Golden told him in their meeting that his class would be cancelled. Therefore, there was no genuine issue of material fact concerning whether the parties executed a written contract.

Dr. Jones seems to argue that, despite the fact that he never executed the written contract, the Defendants are nevertheless not entitled to a judgment as a matter of law on the written contract claim. Dr. Jones argues that there was mutual assent between the parties to the terms of the written contract that the College drafted in anticipation of Dr. Jones teaching the summer class, even though the College did not present the contract to him to sign. He cites two prior cases of this Court for the proposition that written contracts need not be signed to be enforceable. *See T.R. Mills Contractors, Inc. v. WRH Enters.*, 93 S.W.3d 861 (Tenn. Ct. App. 2002); *Remco Equip. Sales, Inc. v. Manz*, 952 S.W.2d 437 (Tenn. Ct. App. 1997).

In *Remco*, the issue was whether a signed rental agreement between the parties established a course of dealings under the Uniform Commercial Code, such that identical terms in a second, unsigned agreement were binding on the parties. *Remco*, 952 S.W.2d at 439. This Court determined that a single transaction did not establish a course of dealings between the parties. *Id.*

In *T.R. Mills*, the primary issue was whether an arbitration provision in an unsigned construction contract was enforceable. *T.R. Mills*, 93 S.W.3d at 867. However, to address that issue, the appellate court first had to determine whether the parties had manifested assent to the terms of the unsigned contract. The Court noted that mutual assent could arise from a course of dealings and that a written contract did not have to be signed to be enforceable if the parties manifested assent to the terms. *Id.* at 866 (citing *Remco*, 952 S.W.2d at 439; *S. Motor Car Co. v. Talliaferro*, 14 Tenn. App. 276 (Ct. App. 1931)). In that case, a form contract was signed by the contractor and submitted to the developer in response to the developer's request for a bid on a project. The developer never signed the contract. *Id.* Nonetheless, the parties performed under the terms of the contract, with the contractor submitting payment requests and the developer making payments in accordance with the contract cost amounts. *Id.* at 867. In their prior dealings, the parties had also performed in accordance with the terms of the same unsigned form contract. *Id.* The *T.R. Mills* court observed that the developer "knew that [the contractor] had submitted the written contract in this case, and did nothing to suggest that he did not assent to its terms," and found that the parties clearly manifested assent to the unsigned contract. *Id.*

These cases are inapposite to the present case. Here, the College prepared a written contract for Dr. Jones to sign, but Dr. Jones was not allowed to sign the contract. In fact, he concedes that he was told by Dr. Golden that his class would be cancelled. Although Dr. Jones and the Defendants dispute the reason why he was not allowed to sign the contract, the reason is immaterial. The fact remains that Dr. Jones was prevented from signing the written contract. Under these circumstances, there was clearly no mutual assent between Dr. Jones and the College to the terms of the written, unexecuted contract, and the trial court did not err in granting summary judgment on Dr. Jones' claim for breach of the express, written contract.

*Contract Implied in Fact*

The trial court also granted the Defendant's motion for summary judgment on Dr. Jones' claim for breach of contract implied in fact. A contract implied in fact "arises under circumstances which show mutual intent or assent to contract." ***Thompson***, 136 S.W.3d at 930 (quoting ***Givens v. Mullikin***, 75 S.W.3d 383, 407 (Tenn. 2002)). A contract implied in fact is similar to an express oral contract. *Id.* The primary difference between the two is the manner in which the parties express their assent. *Id.* "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. . . . In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." *Id.* (quoting ***River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.***, No. M2001-00288-COA-R3-CV, 2002 WL 31302926, at *10 (Tenn. Ct. App. Oct.11, 2002)).

Dr. Jones argues that the trial court erred in granting summary judgment on his claim for breach of contract implied in fact because he and Dr. James entered into an enforceable oral agreement for him to teach the class at issue. Dr. Jones points out that he performed under the oral agreement by teaching two classes. He contends that the parties' conduct and the surrounding circumstances show mutual assent to the oral agreement.

By affidavit, Dr. Jones testified that the College's usual practice was for the oral agreement between the College and the professor to be followed up by a written contract prepared by the division chairperson. Although Dr. Jones and the College apparently dispute the class cancellation policy in effect at that time and why the contract was never presented to Dr. Jones to sign, it is undisputed that Dr. Jones was notified the class was cancelled after he taught the first class, and that no written contract was executed. Therefore, the parties' undisputed conduct and the surrounding circumstances in this case are inconsistent with what Dr. Jones stated was the College's usual practice, and in fact show a lack of mutual assent. Dr. Jones, of course, cannot create mutual assent by his unilateral action of teaching the second class after Dr. Golden informed him that the class would be cancelled. ***See Peoples Bank of Elk Valley v. ConAgra Poultry Co.***, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991) (citations omitted). Accordingly, we find no error in the trial court's grant of summary judgment on Dr. Jones' claim for breach of contract implied in fact.

Dr. Jones argues that the trial court erred in granting summary judgment on his claim for breach of contract implied in law. Contracts implied in law have been described as "a legal fiction that can only arise in the absence of an actual contract or contract implied in fact." ***Overstreet v. TRW Commercial Steering Div.***, 256 S.W.3d 626, 632 (Tenn. 2008) (citing 42 C.J.S. *Implied and Constructive Contracts* § 8 (2007)). They "are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice." ***Ferguson v. Nationwide Prop. & Cas. Ins. Co.***, 218 S.W.3d 42, 50 (Tenn. Ct. App. 2006) (quoting ***Angus v. City of Jackson***, 968 S.W.2d 804, 808 (Tenn. Ct. App. 1997)). This is sometimes referred to as "quasi-contract" or "quantum meruit."[3] ***See Metro Gov't of Nashville & Davidson County v. Cigna Healthcare of Tenn., Inc.***, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005). To recover under a contract implied in law, the following elements must be established:

> (1) There is no existing, enforceable contract between the parties covering the same subject matter;
> (2) The party seeking recovery proves that it provided valuable goods or services;
> (3) The party to be charged received the goods or services;
> (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
> (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

***Ferguson***, 218 S.W.3d at 50 (quoting ***Doe***, 46 S.W.3d at 197–98).

We established above that there was no contract between Dr. Jones and the College as to the class. Dr. Jones taught two class sessions, one after he was told that his class would be cancelled. For this claim, we focus on whether, under the circumstances, it was reasonably understood by the parties that Dr. Jones expected to be compensated for either of the classes that he taught and whether the circumstances demonstrate that it would be unjust for Dr. Jones not to receive such compensation.

The affidavits submitted with the College's motion for summary judgment explained that for summer classes, the College is governed by a "self-sustaining principle," meaning that the tuition and fees for each summer class are used to pay the professor teaching the class. The College's affidavits do not set out the College's policy at that time concerning professor compensation in the event that a class was cancelled after classes had begun to meet. In its brief on appeal and in its motion for summary judgment, the College points to the deposition testimony of Dr. Jones, purportedly showing that Dr. Jones did not reasonably expect to be compensated. However, we do not find Dr. Jones' deposition in the record on appeal. Therefore, we cannot consider it in reaching

---

[3]The term "quantum meruit" is Latin for "as much as he has deserved." BLACK'S LAW DICTIONARY 1255 (7th ed. 1999).

our decision. *See* Tenn. R. App. P. 13(c); ***State Dep't of Children's Servs. v. Owens***, 129 S.W.3d 50, 56 (Tenn. 2004). In Dr. Jones' affidavit submitted in response to the College's motion for summary judgment, Dr. Jones stated that the College's policy was to compensate the professor on a pro rata basis for the time he spent teaching the class. This creates a genuine issue of material fact as to whether Dr. Jones reasonably expected payment for the classes taught.

However, the undisputed facts show that the second class taught by Dr. Jones occurred after he was informed that the class was cancelled. Under those circumstances, it would be unreasonable for Dr. Jones to expect compensation for the second class, and it would not be unjust for him to not receive such compensation.

Therefore, we reverse the trial court's grant of summary judgment on Dr. Jones' claim for breach of contract implied in law as to the first class taught by Dr. Jones, and affirm the grant of summary judgment as to the second class, taught after he was told that the class was cancelled.

### *Implied Covenant of Good Faith and Fair Dealing*

Dr. Jones also argues that the trial court erred in granting summary judgment on his claim for breach of the implied covenant of good faith and fair dealing. However, a claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim. ***Lyons v. Farmers Ins. Exch.***, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000). While every contract contains an implied covenant of good faith and fair dealing, ***Goot v. Metro. Gov't of Nashville & Davidson County***, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005) (citations omitted), there must be a contract to contain the covenant. In this case, as set forth above, there was no contract between Dr. Jones and the College. The most that Dr. Jones can assert is a claim for breach of a contract implied in law, which arises in the absence of an actual contract. *See Overstreet*, 256 S.W.3d at 632 (explaining that a contract implied in law is "a legal fiction that can only arise in the absence of an actual contract or contract implied in fact"). Therefore, because there was no contract between Dr. Jones and the College, the trial court did not err in granting summary judgment to the College on Dr. Jones' claim for breach of the implied covenant of good faith and fair dealing.

### *Intentional Interference with Contract*

Finally, Dr. Jones argues that the trial court erred in granting summary judgment to the College on his claim for intentional interference with contractual relations. In order to state a claim for statutory or common law interference in the performance or the procurement of the breach of a contract, the following elements must be established:

1. There must be a legal contract.
2. The wrongdoer must have knowledge of the existence of the contract.
3. There must be an intention to induce its breach.
4. The wrongdoer must have acted maliciously.
5. There must be a breach of the contract.
6. The act complained of must be the proximate cause of the breach of the contract.

7. There must have been damages resulting from the breach of the contract.

***Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.***, 13 S.W.3d 343, 354–55 (Tenn. Ct. App. 1999) (citations omitted); *see* T.C.A. § 47-50-109 (2001). As noted above, there was no contract between Dr. Jones and the College. Therefore, Dr. Jones is unable to establish the first element of his claim for intentional interference with contractual relations.

In the alternative, Dr. Jones argues that the trial court erred in granting summary judgment on the intentional interference claim because it failed to recognize that a plaintiff may state a claim for intentional interference with at-will employment. However, Dr. Jones points to no place in the record in which he argued to the trial court that Dr. Golden interfered with his at-will employment; he alleged only that Dr. Golden interfered with his contract with the College. Indeed, Dr. Jones repeatedly insisted to the trial court that he was not an at-will employee. The appellate court will normally not consider on appeal issues that were not first raised to the trial court. *See Crossley Constr. Corp. v. Nat'l Fire Ins. Co. of Hartford*, 237 S.W.3d 652, 656 (Tenn. Ct. App. 2007) (citation omitted). Therefore, based on the record before us, we must conclude that Dr. Jones has waived this issue. *See* Tenn. R. App. P. 36(a); *Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000).

## CONCLUSION

Thus, the trial court's grant of summary judgment is reversed as to Dr. Jones' claim of contract implied in law or quasi-contract as to the first summer class that he taught. The grant of summary judgment in favor of the College is affirmed as to all of Dr. Jones' remaining claims.

The decision of the trial court is affirmed in part and reversed in part as set forth above, and remanded for further proceedings consistent with this Opinion. The costs of this appeal are taxed to the appellant Herbert Jones, and his surety, for which execution may issue if necessary.

———————————————————
HOLLY M. KIRBY, JUDGE