IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 31, 2012 Session

# E. JAY MOUNGER ET AL. v. CHARLES D. MOUNGER, JR. ET AL.

**Appeal from the Circuit Court for Roane County**
**No. 14402      Russell E. Simmons, Jr., Judge**

**No. E2010-02168-COA-R3-CV-FILED-MARCH 12, 2012**

The plaintiffs, in their capacity as executors of their mother's estate, filed this action against their brother alleging that he caused the estate to lose the sale of a valuable piece of lakefront property by maliciously asserting a meritless claim to a portion of the property. The defendant represented himself in a jury trial. The jury awarded the estate $6,000,000. The defendant appeals the judgment entered on the jury's verdict. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Charles D. Mounger, Jr., Kingston, Tennessee, appellant, *pro se.*

Archie R. Carpenter, Knoxville, Tennessee, for the appellees, E. Jay Mounger and Katherine Mounger Lasater, Executors of the Estate of Katherine M. Mounger.

**OPINION**

I.

Katherine M. Mounger died owning several pieces of valuable property. This action arises out of her estate's attempt to sell one particular parcel consisting of approximately 1,200 acres of lakefront property in Roane County ("the Parcel"). Two of Mrs. Mounger's three children, E. Jay Mounger and Katherine M. Lasater, were named executors of her estate ("the Estate"). By and through the executors, the Estate entered into a contract ("the Contract") to sell the Parcel to McKenzie Loudon Properties, LLC, for the price of $15,200,000.

The Contract is dated May 9, 2007. It grants McKenzie a 120-day window to perform its due diligence inquiry. The Contract provides for a 30-day extension of the due diligence period. Closing is to occur within 30 days of the completion of McKenzie's due diligence.

During the due diligence period, an appraiser, who was physically on the Parcel, encountered Charles D. Mounger, Jr. ("the Defendant"), a sibling of the executors. The Defendant informed the appraiser that he owned pieces of property within the Parcel and, in fact, had constructed a home on the Parcel. The Defendant advised that any purchaser would be forced to deal with him and that he would not be easy to deal with. The appraiser informed McKenzie and McKenzie's lender as well as the Estate of his encounter with the Defendant. McKenzie considered the Defendant's claims to be a cloud on the title. After the time expired for closing under the strict terms of the Contract, the Defendant recorded a deed from his mother dated March 27, 1995, purporting to grant him several small tracts within the Parcel.

After several unsuccessful attempts by the Estate and McKenzie to settle with the Defendant so that the sale could go forward, the Estate filed an action in chancery court to clear the cloud on the title and eject the Defendant. The Estate prevailed. The chancery court's judgment is part of the record in the present action. It provides that the Defendant's deed is "void and of no effect" and orders the Defendant "immediately ejected from the property of the [E]state in Roane County. . . ."

After clearing title to the Parcel and ejecting the Defendant, the Estate gave McKenzie a further opportunity to close on the property. McKenzie declined, and the Estate filed the present action alleging that it lost the sale because of the Defendant's wrongful conduct. The Estate also alleged that the market value of the Parcel had decreased greatly. The Defendant answered with denials of almost all allegations of the complaint and asserted "res judicata and estoppel, as affirmative defenses, as to any and all matters determined or could have been determined in the prior litigation between the parties . . . ."

The case was tried to a jury. The Defendant represented himself. The jury awarded the Estate compensatory damages of $6,000,000. The court entered judgment on the jury verdict and later denied the Defendant's motion for new trial. The Defendant appeals.

II.

The issues raised on appeal, taken verbatim from the Defendant's brief, are:

Whether the Circuit Court erred by permitting the [Estate] to introduce testimony concerning issues that were not in [the] complaint.

Whether the Circuit Court erred by permitting the [Estate's witness] to testify as to the content of a document that was not produced in discovery nor introduced as evidence in the trial.

Whether the Circuit Court erred by holding that the former suit, tried in Roane County Chancery Court, involving the same parties and same facts, was not a bar to this suit.

III.

A trial court's rulings on evidentiary and discovery matters, including discovery sanctions, is reviewed for abuse of discretion. ***Mercer v. Vanderbilt University, Inc.***, 134 S.W.3d 121, 131-33 (Tenn. 2004). Under this standard, a trial court will not be reversed on appeal if reasonable minds could differ as to the soundness of the ruling. ***Id***. at 133. A trial court's ruling on the affirmative defense of res judicata constitutes a conclusion of law that is reviewed by us de novo with no presumption of correctness. ***In re Estate of Boote***, 198 S.W.3d 699, 719 (Tenn. Ct. App. 2005); ***Morris v. Esmark Apparel, Inc.***, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991).

IV.

The Defendant's argument combines a discussion of the first and second issues. The Defendant claims that the testimony of his brother, E. Jay Mounger, on behalf of the Estate is inconsistent with the allegations of the complaint in at least two significant respects. One of his points concerns Jay Mounger's testimony that McKenzie – upon learning that the Defendant verbally asserted a claim to the appraiser, even before the Defendant recorded the deed – considered the Defendant's claim to be a cloud on the title. We find no inconsistency here since the complaint clearly alleges that the Defendant informed the appraiser that he had an unrecorded deed. Further, the complaint alleges that the appraiser's encounter with the Defendant caused serious enough concern that McKenzie's lender stopped processing the loan. Thus, we do not agree with the Defendant that the proof on this point was inconsistent with the allegations of the complaint.

The second point concerns Jay Mounger's testimony that McKenzie sent the Estate written notification it considered the Defendant's claims to be a cloud on the title. The Defendant points out that the executors stated, in a response to the Defendant's request for

production of documents, that no such writing existed. The Defendant appears to argue that the verdict should be reversed on this basis or that the Estate should be sanctioned by dismissal of their claim against him. The Defendant claims that he "objected" when this testimony was given. We have reviewed the record before us and find no error. First, the transcript does not show that the Defendant objected. He did inform the court of his predicament in that he himself elicited testimony that surprised him, but he did not object, or move to strike, or move for sanctions or anything of that nature. He merely informed the court of his predicament and moved on with his cross-examination of his brother. There is no copy of the alleged letter in the record before us. We are unable to discern whether Jay Mounger was simply mistaken in remembering a letter that did not exist or in denying in discovery that such a document existed. Whatever the truth, we are not presented with a record that justifies finding an abuse of discretion on the part of the trial court, much less an error that justifies reversing the jury's verdict. *See* Tenn. R. App. P. 36(b). It is clear that, despite the Defendant's cross-examination of his brother, the jury had no problem accepting the testimony of Jay Mounger as true. On the record before us, we would not be justified in interfering with that finding.

The Defendant argues strenuously that the trial court should have dismissed the case on his affirmative defense of res judicata. Again, we are unable to determine that the Defendant put the court in a position to sustain the defense. His only proof during his case in chief was the introduction of one document that has no bearing on the issue of res judicata plus his nearly incoherent attempt to testify in narrative form to a lengthy history of the property that has little bearing on the issues in this case. Page after page of the transcript is filled with objections by counsel for the Estate to irrelevant testimony, which objections were almost all sustained. There is no indication in the record before us that the defense of res judicata, although stated in the answer, was ever presented to the court as a basis for dismissing the Estate's Complaint. The only reference to res judicata that we could find in the transcript was in the context of an evidentiary objection lodged by the Estate. It is true that the Defendant discussed the plea of res judicata in a motion for new trial, however, that discussion is also in the context of an evidentiary objection. The record does not contain the parties' opening statements and argument to the jury or the court. In the absence of a record showing that the defense of res judicata was presented to the trial court, we cannot consider it:

> . . . [I]t was the defendant's responsibility, as the appellant, to insure that the record on appeal contained all of the trial court actions and events needed to convey a fair, accurate and complete account of what transpired relative to the issue [of res judicata] being appealed. *See* T.R.A.P. 24; ***State v. Groseclose***, 615 S.W.2d 142, 147 (Tenn. 1981). Thus, even if the defendant

-4-

did raise the matter in the trial court, the lack of a record on appeal of such matter requires us to presume that the trial court ruled correctly. *See State v. Jones*, 623 S.W.2d 129, 131 (Tenn. Crim. App.1981).

*State v. Loden*, No. 03C01-9702-CR-00075, 1998 WL 151135 at *2 (Tenn. Crim. App., filed April 2, 1998). *See also*, *Jones v. Lemoyne -Owen College*, 308 S.W.3d 894, 902, 908 (Tenn. Ct. App. 2009)(appellant's responsibility to prepare a record that shows he presented the issue to the trial court and in the absence of that, this court will assume that the trial court ruled correctly and treat the issue as waived).  Further, we do not give relief on appeal to a party who is responsible for an alleged error that he or she blames on the trial court.  Tenn. R. App. P. 36 (a).

Even if the Defendant properly raised the issue of res judicata, we are not convinced that the chancery court action to clear title and for ejectment bars this action.  The Defendant insists that the Estate impermissibly split its cause of action, therefore, according to the Defendant, the claims in this present action are barred because they could have been made in the chancery court case.  The Defendant is correct that the general rule is a party "cannot split up his cause of action, but must include all grounds upon which he seeks relief in one suit."  *Caldwell v. Spicer & McEvoy*, 19 S.W.2d 238, 239 (Tenn. 1929); *see Regions Financial Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 397 (Tenn. Ct. App. 2009).  However, there is authority to the contrary regarding ejectment actions.  Specifically, Tenn. Code Ann. § 29-15-121 (2000) states, regarding chapter 15 of Title 29 of the Tennessee Code which deals with ejectment actions: "This chapter does not deprive the plaintiff of a right to an action for mesne profits after verdict and judgment in plaintiff's favor . . . ."  Further, "[t]he action for mesne profits only accrues after a recovery in ejectment."  10 Tenn. Juris., *Ejectment* § 34 (2011)(*citing Avent v. Hord*, 40 Tenn. (3 Head) 458 (1859); *Rhodes v. Crutchfield*, 75 Tenn. (7 Lea) 518 (1881)); *Whitaker v. Poston*, 110 S.W. 1019, 1022 (Tenn. 1908).  The term "mesne profits" is defined as the "[v]alue of use or occupation of land during time it was held by one in wrongful possession and is commonly measured in terms of rents and profits."  Blacks Law Dictionary, abridged 5th edition (1983).  Damages are allowed from the time of occupation until the time the interloper vacates the property.  *See id*.  Neither party discusses the statute we have cited, but we see no logical reason for treating the claim made by the Estate in this action different from an action for recovery of rent.  Normally, the measure of damages for being wrongfully dispossessed of real property is the rental value of the property.  *Uhlhorn v. Keltner*, 723 S.W.2d 131, 135 (Tenn. Ct. App. 1986).  However, in this case, the unique facts before us justify an award of the damages resulting from the lost sale.  Accordingly, we find no error with regard to the Defendant's affirmative defense of res judicata asserted in his answer.

V.


The judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellant, Charles D. Mounger, Jr.  This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed by the trial court.


_____
CHARLES D. SUSANO, JR., JUDGE