IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2025

## GAIL GOTTESMAN v. TODD HECKER ET AL.

**Appeal from the Circuit Court for Benton County**
**No. 24-CV-29      Bruce Griffey, Judge**
_____

**No. W2025-00966-COA-R3-CV**
_____

In this matter involving the sale of a parcel of improved real property, the buyer claimed that the sellers should be held liable for fraudulent misrepresentations regarding the condition of the property. The trial court granted summary judgment in favor of the sellers, determining that the presence of an "as-is" clause in the parties' sales contract precluded the buyer's recovery. Upon review, we reverse the trial court's grant of summary judgment with respect to the buyer's claims of fraudulent misrepresentation and fraudulent concealment as well as her claim based on the Tennessee Residential Property Disclosures Act. We remand these issues to the trial court for further consideration. We affirm the trial court's grant of summary judgment concerning the buyer's remaining claims and deny the buyer's request for reassignment to a different trial court judge upon remand. We also deny the sellers' request for an award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JEFFREY USMAN and VALERIE L. SMITH, JJ., joined.

Gail Gottesman, Holladay, Tennessee, Pro Se.

Bennett J. Wills, Brentwood, Tennessee, for the appellees, Todd Hecker and Tammy Hecker.

Robert M. Burns and McKenna G. Williams, Nashville, Tennessee, for the appellee, Karen Hoff.

Jonathan Stokes, Memphis, Tennessee, for the appellee, Robert Ellis.

## OPINION

### I. Factual and Procedural History

On October 10, 2024, the plaintiff, Gail Gottesman, filed a *pro se* complaint in the Benton County Circuit Court ("trial court") against the defendants, Todd Hecker, Tammy Hecker, Karen Hoff, and Robert Ellis. In her complaint, Ms. Gottesman asserted that in February 2024, she had purchased from the Heckers a parcel of improved real property on Old Union Church Road in Holladay, Tennessee ("the Home"). Ms. Gottesman explained that Ms. Hoff had served as real estate agent for the Heckers and that Mr. Ellis was a home inspector who had performed a pre-purchase inspection of the Home. Ms. Gottesman claimed that all defendants had fraudulently induced her to purchase the Home by misrepresenting the condition of the Home and other outbuildings on the property. Ms. Gottesman claimed that Ms. Hoff had falsely advertised the Home as being in better condition than it was and that the Heckers had misrepresented the condition of the Home on the statutorily required residential property disclosure form ("Disclosure Form"). Ms. Gottesman further averred that Mr. Ellis had colluded with Ms. Hoff to "push the sale through" by omitting serious defects in the Home's condition from his report. Ms. Gottesman sought compensatory and punitive damages totaling more than $800,000.

On November 15, 2024, Ms. Hoff filed an answer, denying the material allegations of the complaint and asserting affirmative defenses, including that Ms. Gottesman had failed to plead her allegations of fraud with particularity pursuant to Tennessee Rule of Civil Procedure 9. Ms. Gottesman accordingly sought to amend her complaint to add further allegations to support her fraud and misrepresentation claims. Ms. Gottesman further clarified that in addition to her claims of fraud/misrepresentation, she was asserting claims of negligence/breach of duty and breach of contract.

On November 20, 2024, Mr. Ellis filed a motion to dismiss or, in the alternative, motion for a more definite statement. Mr. Ellis asserted that Ms. Gottesman had failed to list the defects in the Home that she considered "serious" and that she alleged had been omitted from Mr. Ellis's report. Mr. Ellis further stated that Ms. Gottesman had failed to clarify how he had purportedly "colluded" with Ms. Hoff. Mr. Ellis thus sought dismissal of the claims against him or to have Ms. Gottesman identify in sufficient detail the facts supporting those claims.

On November 25, 2024, the Heckers filed an answer denying the allegations of the complaint. The Heckers affirmatively stated that the parties' purchase contract ("the Contract") specified that the Home was being sold in "as is" condition and that Ms. Gottesman had "accepted" the condition of the Home "as of the time of closing." With permission from the trial court, Ms. Gottesman filed an amended complaint on December 19, 2024.

On January 2, 2025, Ms. Gottesman filed a motion requesting that the trial court admit the report of a structural engineer, Dr. Keith Michael Garman, regarding the Home's condition. Ms. Gottesman attached the report to her motion as an exhibit. Dr. Garman's report detailed multiple issues with the Home's construction and condition and also addressed problems with the condition of other buildings on the property. Ms. Gottesman also attached Dr. Garman's affidavit detailing his professional background.

The defendants filed answers to the amended complaint and responses opposing the admission of Dr. Garman's report, after which the trial court entered an order denying admission of the report. The trial court subsequently entered a scheduling order on February 20, 2025. On March 6, 2025, Ms. Gottesman filed a second amended complaint.

On March 11, 2025, the Heckers filed a motion for summary judgment, wherein they claimed that they had disclosed all known material defects with the Home on the Disclosure Form. The Heckers also averred that Ms. Gottesman had accepted the Home "as is" after having had the opportunity to inspect it. According to the Heckers, they had lived in the Home for a few years prior to selling it, so the sale was not "illegal," pursuant to Tennessee Code Annotated § 62-6-103, as Ms. Gottesman claimed. The Heckers attached to the motion copies of the Contract, the Disclosure Form, and their own declarations. The Heckers concomitantly filed a statement of undisputed material facts.

On March 24, 2025, the defendants filed a joint motion to strike the second amended complaint, arguing that because all defendants had filed answers to the amended complaint, Ms. Gottesman was required to seek leave of court or consent of the defendants before filing another amended complaint. Ms. Gottesman subsequently filed a motion seeking leave to amend her complaint, which was opposed by the defendants.

On April 28, 2025, Ms. Gottesman filed a response in opposition to the Heckers' motion for summary judgment along with her own statement of material facts. Ms. Gottesman pointed out discrepancies between the Home's actual square footage and amenities and what she claimed was stated in the sale listing. Ms. Gottesman again asserted that the Disclosure Form had failed to list all of the serious defects with the Home. Ms. Gottesman averred that the Heckers had constructed the Home themselves and were aware of all defects. Ms. Gottesman therefore asserted that genuine disputes of material fact precluded a grant of summary judgment. Ms. Gottesman attached to her response a copy of an inspection report by a structural engineering firm, detailing numerous issues with the Home. Ms. Gottesman also filed a response to the Heckers' statement of undisputed material facts and a declaration signed by her under penalty of perjury.

On April 28, 2025, the trial court entered an order granting Ms. Gottesman's motion for leave to file a second amended complaint. Shortly thereafter, the Heckers filed a reply regarding their summary judgment motion and Ms. Gottesman's response wherein they argued that (1) Ms. Gottesman's exhibits were inadmissible, (2) Tennessee Code

Annotated § 62-6-103 did not apply to a homeowner constructing a home for personal use, (3) parol evidence could not be used to vary the terms of an unambiguous written contract, and (4) the "as is" clause in the Contract prevented Ms. Gottesman's claims.

On June 2, 2025, the trial court entered a final order granting summary judgment in favor of the Heckers. The trial court found that the Contract, which Ms. Gottesman had signed, contained an "as is" provision, which expressly disclaimed any warranties regarding the condition of the Home. The court also found that Ms. Gottesman had been afforded the opportunity to hire an inspector to inspect the Home prior to closing and that she had done so. The court further determined that the Heckers had disclosed all known material defects in the Home, as evinced by the Disclosure Form.

According to the trial court, Ms. Gottesman admitted during the summary judgment hearing that she had not personally inspected the Home prior to closing. The court discerned that Ms. Gottesman chose to proceed with closing despite her knowledge of the Home's condition and the "as is" provision in the Contract. The court also determined that Ms. Gottesman's allegations of fraud, breach of contract, and illegality of the sale were unsupported by the evidence "as all material defects were disclosed, and the sale was conducted legally under Tennessee law."

The trial court further explained:

Here, the Court finds that the "as-is" clause in the [Contract] is controlling on the issues. Tennessee courts uphold "as-is" clauses. *See Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 464 (Tenn. Ct. App. 2003). [Ms. Gottesman] agreed to purchase [the Home] with full knowledge of its "as-is" condition, precluding her from later complaining about discovered defects. Further, Tennessee follows the doctrine of *caveat emptor*, which places the burden on the buyer to inspect the property. *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003). [Ms. Gottesman] obtained a satisfactory "pass" inspection and closed on the property.

[Ms. Gottesman] waived her right to complain about any issues related to the property as she had every available opportunity to complete inspections, negotiate the contract, and walk away from the deal. She chose instead to purchase the property, sight unseen, in as-is condition. As such, she cannot now come to the Court and ask for relief from the Heckers. The Court finds the as-is clause to be fully enforceable and as such, [Ms. Gottesman's] claims fail as a matter of law.

Moreover, [Ms. Gottesman] claims that the sale of the real estate was illegal pursuant to T.C.A. § 62-6-103. This part of [Ms. Gottesman's] claim

also fails as a matter of law. T.C.A. § 62-6-103, provides, generally, that a contractor's license is required to construct a residence. The exception to the rule is that a person may construct a private residence on private property, without a license, so long as the *purpose* is not for resale, lease, rent, or any other similar purpose. T.C.A. § 62-6-103(a). "Purpose" is the keyword and indicates intent. The primary factors the Court should consider is the owner's intent at the time of construction and how many homes were constructed in a two-year time period. For example, there is a rebuttable presumption that if a property owner constructs more than one single residence in a period of two years, the construction would be intended for resale. T.C.A. § 62-6-103(a)(2)(B). Here, the Court finds that the Heckers constructed the property for use as a private residence given that they lived in the property for years prior to selling. The Heckers did not illegally construct the property; as such, [Ms. Gottesman's] claims in this regard fail as a matter of law.

The court thus granted summary judgment in favor of the Heckers and dismissed Ms. Gottesman's claims against them. However, the court denied the Heckers' request for an award of attorney's fees. The court certified the order as final pursuant to Tennessee Rule of Civil Procedure 54.02.

On June 3, 2025, Ms. Gottesman filed a motion for reconsideration of the order, which she later withdrew. Ms. Gottesman then timely appealed. Ms. Gottesman subsequently filed a statement of the evidence in lieu of a transcript from the summary judgment hearing. In her statement, Ms. Gottesman reported that when she had attempted to present the Disclosure Form to the court at the hearing, the judge refused to examine it. She further reported that when she attempted to cite case law and argue her points regarding disputes of fact, the judge "repeatedly cut [her] off, refused to hear the legal citations, and did not consider any of [her] exhibits." No other transcript or statement of the evidence was filed.

## II. Issues Presented

Ms. Gottesman presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by granting summary judgment in favor of the Heckers when the sale of the Home was allegedly prohibited by Tennessee Code Annotated § 62-6-103.

2.      Whether the trial court erred by granting summary judgment to the Heckers when their actions allegedly violated the Tennessee Residential Property Disclosures Act, codified at Tennessee Code Annotated § 66-5-201, *et seq.*

3. Whether the trial court erred by granting summary judgment to the Heckers because (1) genuine issues of material fact existed and (2) the trial court failed to view the evidence in the light most favorable to the non-movant.

4. Whether the trial court erred by refusing to consider Ms. Gottesman's evidence, including the Disclosure Form, expert's report, and photographs.

5. Whether the trial court erred by relying on irrelevant case law.

6. Whether the trial court erred by refusing to adjudicate Ms. Gottesman's motion to compel before granting summary judgment.

7. Whether reassignment to a different judge is necessary upon remand to preserve the appearance of impropriety and to ensure confidence in the fairness of the proceedings.

The Heckers have raised the following additional issue:

8. Whether the trial court erred by denying the Heckers an award of reasonable attorney's fees as the prevailing parties when the underlying contract provided for a mandatory award of fees.

### III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We

reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

IV. Claim Pursuant to Tennessee Code Annotated § 62-6-103

Ms. Gottesman claims that the sale of the home was prohibited by Tennessee Code Annotated § 62-6-103(a) (West January 1, 2014, to current), which provides in pertinent part:

(1)     Any person, firm or corporation engaged in contracting in this state shall be required to submit evidence of qualification to engage in contracting, and shall be licensed as provided in this part. It is unlawful for any person, firm, or corporation to engage in or offer to engage in contracting for any project in this state, unless, at the time of such engagement or offer to engage, the person, firm, or corporation has been duly licensed with a monetary limitation sufficient to allow the person, firm, or corporation to engage in or offer to engage in such contracting project under this chapter. The board for licensing contractors shall have the authority to grant or allow an exception, in an amount not to exceed ten percent (10%), to the monetary limitation of such license provided in this subdivision (a)(1). Any person, firm, or corporation engaged in contracting, including a person, firm, or corporation that engages in the construction of residences or dwellings constructed on private property for the purpose of resale, lease, rent, or any other similar purpose, shall be required to submit evidence of qualification to engage in contracting and shall be licensed. It is unlawful for any person, firm, or corporation to engage in, or offer to engage in, contracting as described in this subdivision (a)(1) unless the person, firm, or corporation has been duly licensed under this part.

(2)     (A)     Notwithstanding subdivision (a)(1), any person, firm or church that owns property and constructs on the property single residences, farm buildings or other buildings for individual use, and not for resale, lease, rent or other similar purpose, is exempt from the requirements of this part.

(B)     Except in counties with a population of not less than seven hundred seventy-seven thousand one hundred thirteen (777,113), according to the 1980 federal census or any subsequent federal census, a person or firm specified in subdivision (a)(2)(A) shall not make more than one (1) application for a permit to construct a single residence or shall not construct more than one (1) single residence within a period of two (2) years. There shall be a rebuttable presumption that

- 8 -

the person or firm intends to construct for the purpose of resale, lease, rent or any other similar purpose if more than one (1) application is made for a permit to construct a single residence or if more than one (1) single residence is constructed within a period of two (2) years. This subdivision (a)(2)(B) shall not be construed to alter the definition of "contractor" as defined in § 62-6-102.

* * *

(5) Notwithstanding subdivision (a)(1), any single residence homeowner is exempt from the limited licensed electrician requirements of this part for purposes of performing electrical work on the homeowner's own residence.

In their statement of undisputed material facts, the Heckers stated that they had constructed the Home in 2019 for personal use and that the home was not listed for sale until 2024. Ms. Gottesman presented no contrary proof and did not demonstrate that the Heckers had applied for more than one building permit within a two-year period. Accordingly, the Heckers met the requirements of the exception presented in subsections (2)(A)-(B) regarding construction of a residence for individual use. As such, the Heckers have negated an essential element of Ms. Gottesman's claim under Tennessee Code Annotated § 62-6-103, and the trial court properly granted summary judgment in the Heckers' favor with respect to this claim.

V. Claim Pursuant to Tennessee Residential Property Disclosures Act

Ms. Gottesman also posited that the Heckers had violated the Tennessee Residential Property Disclosures Act, codified at Tennessee Code Annotated § 66-5-201, *et seq.* (West July 10, 2015, to current), by omitting various known defects in the Home from the Disclosure Form. In analyzing the relevant portions of the Act, we note that Tennessee Code Annotated § 66-5-201 provides:

This part applies only with respect to transfers by sale, exchange, installment land sales contract or lease with option to buy residential real property consisting of not less than one (1) nor more than four (4) dwelling units, including site-built and nonsite-built homes, whether or not the transaction is consummated with the assistance of a licensed real estate broker or salesperson. The disclosure statement referenced in § 66-5-202 is not a warranty of any kind by a seller and is not a substitute for inspections either by the individual purchasers or by a professional home inspector. The disclosure required by this part shall be provided to potential buyers for their exclusive use and may not be relied upon by purchasers in subsequent

transfers from the original purchaser who received the property disclosure. The required disclosure shall be given in good faith by the owner or owners of property that is being transferred and shall be subject to the requirements of this part.

Concerning the required form, Tennessee Code Annotated § 66-5-202 states:

With regard to transfers described in § 66-5-201, the owner of the residential property shall furnish to a purchaser one of the following:

(1)     A residential property disclosure statement in the form provided in this part regarding the condition of the property, including any material defects known to the owner. Such disclosure form may be as included in this part and must include all items listed on the disclosure form required pursuant to this part. The disclosure form shall contain a notice to prospective purchasers and owners that the prospective purchaser and the owner may wish to obtain professional advice or inspections of the property. The disclosure form shall also contain a notice to purchasers that the information contained in the disclosure are the representations of the owner and are not the representations of the real estate licensee or sales person, if any. The owner shall not be required to undertake or provide any independent investigation or inspection of the property in order to make the disclosures required by this part; or

(2)     A residential property disclaimer statement stating that the owner makes no representations or warranties as to the condition of the real property or any improvements thereon and that purchaser will be receiving the real property "as is," that is, with all defects which may exist, if any, except as otherwise provided in the real estate purchase contract. A disclaimer statement may only be permitted where the purchaser waives the required disclosure under subdivision (1). If the purchaser does not waive the required disclosure under this part, the disclosure statement described in subdivision (1) shall be provided in accordance with the requirements of this part.

Tennessee Code Annotated § 66-5-204 addresses the seller's liability with regard to the required disclosures, stating that the seller is not responsible for any "error, inaccuracy or omission" in the disclosure form if:

(1)     The error, inaccuracy or omission was not within the actual knowledge of the owner or was based upon information provided by public agencies or by other persons providing information as specified

in subsection (b) that is required to be disclosed pursuant to this part, or the owner reasonably believed the information to be correct; and

(2)     The owner was not grossly negligent in obtaining the information from a third party and transmitting it.

Finally, Tennessee Code Annotated § 66-5-208 addresses the purchaser's remedies for a seller's misrepresentation on a residential property disclosure statement, which shall be either:

(1)     An action for actual damages suffered as a result of defects existing in the property as of the date of execution of the real estate purchase contract; provided, that the owner has actually presented to a purchaser the disclosure statement required by this part, and of which the purchaser was not aware at the earlier of closing or occupancy by the purchaser, in the event of a sale, or occupancy in the event of a lease with the option to purchase.  Any action brought under this subsection (a) shall be commenced within one (1) year from the date the purchaser received the disclosure statement or the date of closing, or occupancy if a lease situation, whichever occurs first;

(2)     In the event of a misrepresentation in any residential property disclosure statement required by this part, termination of the contract prior to closing, subject to § 66-5-204; or

(3)     Such other remedies at law or equity otherwise available against an owner in the event of an owner's intentional or willful misrepresentation of the condition of the subject property.

It is undisputed that the Heckers provided the Disclosure Form in accordance with Tennessee Code Annotated § 66-5-202 and were therefore required to disclose "any material defects known to" them. *See id.*  Pursuant to Tennessee Code Annotated § 66-5-204(1), the Heckers would be liable for any inaccuracy or omission in the Disclosure Form unless such omission "was not within the actual knowledge of the owner."  If the Heckers knew of any material defects and failed to disclose them, they could be subject to liability for those defects by virtue of their intentional or willful misrepresentation of the Home's condition.  *See* Tenn. Code Ann. § 66-5-208.

In her second amended complaint, Ms. Gottesman averred that the Heckers had failed to disclose the following defects on the Disclosure Form:

a.      Roof Condition:  The Heckers stated that the roof was only four years old and had no defects.  In reality, they knew or should have known

- 11 -

that: the roof was actively leaking at the time of sale, the roofing tiles were delaminating and failing, the roof was visibly sagging, indicating serious structural defects and the roof in the west barn contained multiple holes, allowing water intrusion.

b.      Interior Walls, Ceilings, and Floors: the Heckers affirmatively represented that there were no defects in the interior walls, ceilings, or floors. In reality: the walls were not plumb (not vertically straight) and the floors and ceilings were not level, indicating structural instability.

c.      Windows: the Heckers stated that there were no defects in the windows. However: the windows in Bedroom 1 were bowed and difficult to operate and none of the windows properly met at the frames and could not be locked, creating security concerns.

d.      Plumbing System: the Heckers claimed that there were no plumbing defects. In reality: Bathroom 1 lacked a P-trap, allowing sewer gases to escape into the house and there were uncapped sewer lines, further allowing hazardous gases into the home and the sewer vent stacks terminated in the attic instead of venting to the exterior, a serious code violation.

e.      Septic System: the Heckers stated that the septic system had no known defects. However: they never obtained the legally required permit for the septic system and the septic system was never inspected or approved under Tennessee law.

f.      Electrical System: the Heckers represented that the electrical system was free of defects. In truth: the electrical system was improperly wired and not permitted or inspected in violation of Tennessee law and the property had 100-amp service running from a barn, yet the house contained two separate 200-amp panels, creating a fire hazard.

g.      Exterior Walls and Structural Integrity: the Heckers stated there were no defects in the exterior walls. In reality: the wood siding was not properly sealed, leading to significant water damage and rot. There were visible gaps in the siding around the entire structure, permitting water intrusion into the walls.

h.      Foundation Issues: the Heckers stated that the foundation had no defects. However, the foundation had visible cracking around the entire perimeter of the house, indicating structural instability.

i.     Building Code Compliance:  The Heckers claimed that the house was built to Pennsylvania code.  However, Pennsylvania, like Tennessee, has adopted the International Residential Code (IRC) statewide, and the house was not built to IRC standards.  There is no evidence that it was constructed in compliance with any recognized building code.

j.     Flooding, Drainage, and Grading Issues:  the Heckers represented that there were no flooding, drainage, or grading problems on the property.  In reality:  the property had severe grading issues, leading to chronic water intrusion in the barns, years of water runoff had caused rotting of sill plates and wall supports in the barns and water actively seeped through the walls of the East barn, further compromising the structure.

By contrast, the Heckers generally stated in their statement of undisputed facts and in their declarations that they had disclosed all known defects in the Home.  The Disclosure Form, however, demonstrates that in response to the questions regarding whether the Heckers were aware of any defects or malfunctions in the interior walls, ceilings, floors, windows, septic system, exterior walls, roof, or foundation of the Home, the Heckers had responded, "No."  In her response to the Heckers' statement of undisputed material facts, Ms. Gottesman disputed the Heckers' general claim of full disclosure and reiterated her above-listed description of the many defects she alleged she had found with the Home.

Ms. Gottesman's allegations concerning the severity and type of defects she had discovered in the Home, if taken as true, would clearly indicate that the Heckers had knowledge of the defects at the time the Home was sold because the Heckers had constructed the Home and lived there for a number of years.  *See Copeland v. Healthsouth/Methodist Rehab. Hosp., LP*, 565 S.W.3d 260, 276 (Tenn. 2018) ("[W]e take the strongest legitimate view of the evidence in favor of . . . the non-moving party for summary judgment and allow all reasonable inferences in his favor.").  However, the Heckers have disclaimed knowledge of any of the claimed defects.  Accordingly, Ms. Gottesman has clearly established the existence of genuine issues of material fact.  *See State ex rel. Slatery v. HRC Med. Centers, Inc.*, 603 S.W.3d 1, 17 (Tenn. Ct. App. 2019) ("A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" (quoting *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012))).

Our *de novo* review of the trial court's grant of summary judgment concerning Ms. Gottesman's claim that the Heckers misrepresented the condition of the Home on the Disclosure Form leads us to conclude that summary judgment was improvidently granted.  Genuine issues of material fact exist concerning whether the Heckers were aware of significant defects in the Home at the time they signed the Disclosure Form and whether they misrepresented the Home's condition.  Accordingly, we reverse the trial court's grant

of summary judgment on this claim and remand the claim to the trial court for further consideration.

## VI. Other Claims

Ms. Gottesman has also raised the general issue of whether genuine issues of material fact existed precluding summary judgment regarding her other claims against the Heckers, namely fraudulent misrepresentation, fraudulent concealment, breach of contract, and breach of the duty of good faith and fair dealing. "A purchaser who has been the victim of a misrepresentation . . . is afforded . . . a number of alternate remedies, including actions for rescission and restitution, actions for breach of contract and actions in tort for misrepresentation." *Dunn v. Vukodinovich*, 700 S.W.3d 64, 86 (Tenn. Ct. App. 2023) (quoting *Isaacs v. Bokor*, 566 S.W.2d 532, 537 (Tenn. 1978)).

We acknowledge that the Contract provides:  "Closing of this sale constitutes acceptance of Property in its condition as of the time of Closing, unless otherwise mutually agreed upon in writing."  The trial court cited *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 464 (Tenn. Ct. App. 2003), and *Patel v. Bayliff*, 121 S.W.3d 347, 353 (Tenn. Ct. App. 2003), and determined that "the 'as-is' clause in the [Contract] is controlling on the issues."  We disagree and find that the cases cited do not support the trial court's grant of summary judgment regarding all of Ms. Gottesman's claims.[1]

This Court has previously determined that an "as-is" clause in a contract is enforceable <u>absent allegations of fraud or misrepresentation</u>.  *See Odom v. Oliver*, 310 S.W.3d 344, 350 (Tenn. Ct. App. 2009) ("Courts generally enforce a contract, including an express disclaimer of warranties such as an "as is" clause, absent fraud or mistake."); *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (finding an as-is clause in a real estate contract "valid and enforceable in the absence of

---

[1] *Messer Griesheim* does not address a contract with an as-is clause; instead, it is a products liability case that provides little relevant authority in this matter. *See* 131 S.W.3d at 464. *Patel* does provide guidance in this matter, although it does not support the trial court's grant of summary judgment. *See* 121 S.W.3d at 353. *Patel* involved a home purchase wherein the sellers had treated their home for termites on more than one occasion before listing it for sale. *Id.* The sellers did not disclose this fact to the buyers, however, and provided a letter from a pest control company stating that an inspection had revealed no evidence of termites at the time of the sale. *Id.* After the buyers had lived in the home for a few months, they discovered damage due to an active termite infestation. *Id.* The buyers filed suit against the sellers for fraudulent misrepresentation and concealment and negligent misrepresentation, and the trial court granted summary judgment in favor of the sellers. *Id.* On appeal in *Patel*, this Court determined that genuine issues of material fact existed precluding summary judgment. *See id.* The *Patel* Court based this determination on, *inter alia*, the fact that one of the sellers had signed a form "attesting that he had disclosed all known property information regarding [termite] infestation" despite his knowledge of prior termite treatments. *See id.* at 354.  Accordingly, *Patel* does not stand for the proposition that the doctrine of *caveat emptor* precludes recovery in all cases, as the Heckers argue.

fraudulent misrepresentation and concealment"). In cases such as this one, where allegations of fraud and misrepresentation are present, an "as-is" clause does not end the inquiry.

In *Odom*, this Court addressed the issue of the weight and enforceability of an "as-is" clause in a real estate contract. 310 S.W.3d at 350. The *Odom* sellers had purchased a home with log walls that had been covered with vinyl siding on the exterior. *Id.* While living in the home, the sellers had added sheetrock to the interior of the walls, such that the logs were not visible. *Id.* The fact that the exterior walls were of log construction and that sheetrock had been added by the sellers was not disclosed on the residential disclosure form when the sellers later sold the home. *Id.* Although they had an opportunity to have the home inspected at the time of the sale, the buyers did not do so. *Id.* After purchasing the home, the buyers discovered that the walls were constructed of logs and that a significant portion of the logs were rotting and needed repair or replacement. *Id.* The buyers filed suit for rescission of the sale, arguing that the sellers should have disclosed that the home's walls were constructed of logs and presenting evidence from a realtor that log homes were more difficult to sell. *Id.* The trial court granted summary judgment in favor of the sellers. *Id.*

On appeal in *Odom*, this Court addressed the fact that the parties' contract contained an "as-is" provision, which the sellers relied upon in disclaiming any liability. *Id.* The *Odom* Court stated:

> Because the parties disagree as to the relevance of the "as is" clause in the purchase agreement, we first address the weight an "as is" provision has when a party alleges fraudulent concealment. Courts generally enforce a contract, including an express disclaimer of warranties such as an "as is" clause, absent fraud or mistake. *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn. Ct. App. 1991). In *Edmondson v. Coates*, this Court rejected the argument that "[buyers] cannot prevail on their fraudulent concealment claim because the 'as is' clause assigns to the buyers the risk of any and all defects" on the basis that enforcing the express disclaimer of warranties "would be to blindly enforce a contract obtained by fraud." *Edmondson*, 1992 WL 108717, at *10-11; *see also Godwin Aircraft, Inc. v. Houston*, 851 S.W.2d 816, 822 (Tenn. Ct. App. 1992) ("As is" disclaimer and opportunity for buyer to inspect aircraft did not relieve the seller of liability for misrepresentation that the aircraft was airworthy because a tortious misrepresentation case is a distinct and separate cause of action from breach of warranty case.). Thus an inquiry as to the effect of the "as is" clause just begs the question whether Sellers committed fraud. This Court noted, however, in *Pitz v. Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979 (Tenn. Ct. App. 2004), that

> *Edmondson* says only that an 'as is' provision in a contract is not a shield where the seller knew of a defect and withheld the information from a buyer. It does *not* say that the 'as is' provision cannot be considered *at all* in determining whether the buyer's reliance on the seller's representation was reasonable.

> *Pitz*, 2004 WL 2951979, at *9. We, therefore, shall consider the "as is" clause among other factors in inquiring whether a plaintiff's reliance on a defendant's misrepresentation or omission was reasonable. *Id.*

*Odom*, 310 S.W.3d at 350-351. Similarly, here, the "as-is" clause is but one consideration among other factors to determine whether Ms. Gottesman's reliance on the Heckers' alleged misrepresentations was reasonable. It is not dispositive of all of Ms. Gottesman's claims. Accordingly, we will address each remaining claim in turn.

Regarding a claim of fraudulent misrepresentation, this Court has previously explained:

> [A] plaintiff alleging fraudulent misrepresentation must address the following elements with particularity: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. *Metropolitan Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992) (citing *Graham v. First Am. Nat'l Bank*, 594 S .W.2d 723, 725 (Tenn. Ct. App. 1979)).

*McPherson v. Shea Ear Clinic*, No. W2006-01936-COA-R3-CV, 2007 WL 1237718, at *9 (Tenn. Ct. App. Apr. 27, 2007). Similarly, regarding a claim of fraudulent concealment, a plaintiff must show the following: "(1) the defendant had a duty to disclose a known fact or condition; (2) the defendant failed to disclose it; (3) the plaintiff reasonably relied upon the resulting misrepresentation; and (4) the plaintiff consequently suffered injury." *Briggs & Stratton Power Prods. Grp., LLC v. Osram Sylvania, Inc.*, No. W2016-01799-COA-R3-CV, 2017 WL 5992361, at *11 (Tenn. Ct. App. Dec. 4, 2017) (quoting *Wright v. Wacker-Chemie AG*, No. 1:13-LC-331, 2014 WL 3810584, at *10 (E.D. Tenn. Aug. 1, 2014)).

Ms. Gottesman has alleged that the Heckers had a duty to truthfully disclose known defects in the Home pursuant to the Tennessee Residential Properties Disclosure Act. We agree. Ms. Gottesman has also alleged that the Heckers knowingly and intentionally failed to disclose substantial defects in the Home of which they were aware. Ms. Gottesman

- 16 -

stated in her complaint that she relied on the misrepresentations in the Disclosure Form to her detriment. Under the circumstances, Ms. Gottesman's reliance on the Heckers' statements in the statutorily required Disclosure Form was reasonable based upon the Heckers' signed certification that the facts stated in the Disclosure Form were true. In addition, Ms. Gottesman has alleged that she will continue to suffer monetary damages due to the lack of disclosure of serious defects in the Home.

Although the Heckers have denied failing to disclose known defects, the Disclosure Form signed by the Heckers did not list any of the defects that Ms. Gottesman claims were present in the Home when she purchased it, many of which she maintains had been present for some time based on the severity of the damage to the home. Notably, the Heckers have not disclaimed knowledge of the specific issues noted by Ms. Gottesman or that these conditions existed at the time of the sale. Taking the strongest legitimate view of the evidence in Ms. Gottesman's favor, we conclude that Ms. Gottesman has also demonstrated the existence of a genuine issue of material fact with respect to her claims of fraudulent misrepresentation and concealment.

To support a breach of contract claim, a plaintiff must allege: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Here, Ms. Gottesman asserted in her second amended complaint that the Heckers had breached the Contract by "failing to act in good faith and misrepresenting the condition and legal status of the [Home]" in the Disclosure Form.

In other words, Ms. Gottesman's breach of contract claims are, in actuality, a restatement of her misrepresentation and concealment claims. Ms. Gottesman has not alleged a specific nonperformance of the Heckers' duties under the Contract that amounts to a breach. Therefore, we cannot conclude that a genuine issue of material fact exists regarding whether the Heckers breached the Contract.

Concerning an alleged breach of the duty of good faith and fair dealing by the Heckers, this Court has previously explained: "[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim." *Cadence Bank, N.A. v. The Alpha Tr.*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) (quoting *Jones v. LeMoyne-Owen College*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009)). Indeed, in her second amended complaint, Ms. Gottesman's claim of breach of good faith is delineated as part of her claim of breach of contract.

This Court has made clear, however, that "absent a valid claim for breach of contract," there exists no cause of action for breach of implied covenant of good faith and fair dealing. *See SecurAmerica Bus. Credit v. Schledwitz*, No. W2012-02605-COA-R3-

CV, 2014 WL 1266121, at *33-34 (Tenn. Ct. App. Mar. 28, 2014) (quoting *Berry v. Mort. Elec. Registration Sys.*, No. W2013-00474-COA-R3-CV, 2013 WL 5634472, at *7 (Tenn. Ct. App. Oct. 15, 2013). *See also Cadence Bank*, 473 S.W.3d at 772; *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989) (noting that without an underlying breach of contract, a breach of good faith is not an "actionable" claim). Moreover, even if a claim for breach of the duty of good faith and fair dealing were a stand-alone claim, such claim "goes to the performance or enforcement of the contract," not to its execution or formation. *See Duke v. Browning-Ferris Indus. of Tenn., Inc.*, No. W2005-00146-COA-R3-CV, 2006 WL 1491547, at *9 (Tenn. Ct. App. May 31, 2006). Accordingly, because Ms. Gottesman failed to present evidence supporting her breach of contract claim, her claim of breach of the duty of good faith and fair dealing must also fail.

We therefore reverse the trial court's grant of summary judgment in favor of the Heckers on the claims of fraudulent misrepresentation and fraudulent concealment. We remand these issues to the trial court for further consideration. We affirm the trial court's grant of summary judgment concerning Ms. Gottesman's remaining claims. By reason of the above rulings, we determine that Ms. Gottesman's other issues regarding summary judgment are pretermitted as moot. Upon remand, the trial court will have the opportunity to address Ms. Gottesman's motion to compel and any other necessary discovery issues. *See, e.g., Gipson v. Taylor*, No. 01A01-9811-CH-00611, 1999 WL 652259, at *5 (Tenn. Ct. App. Aug. 27, 1999) ("Unless the party opposing the Rule 56 motion has had a legitimate opportunity both to discover facts and present to the trial court its position as to the existence of a dispute as to a material fact, a trial court cannot determine whether or not there is a genuine issue as to any material fact."). We also pretermit the Heckers' issue regarding an award of attorney's fees pursuant to the Contract inasmuch as they have not yet been determined to be the prevailing parties.

## VII. Reassignment upon Remand

Finally, Ms. Gottesman seeks reassignment to a different judge upon remand "to preserve the appearance of impropriety and to ensure confidence in the fairness of the proceedings." As this Court has previously explained:

> "An appellate court may . . . order reassignment of a case to a different judge in the exercise of the court's inherent power to administer the system of appeals and remand." *See* 5 Am. Jur. 2d Appellate Review § 754 (2007). Some factors to be considered by an appellate court in deciding whether to exercise its supervisory authority to reassign a case are: (1) whether on remand the trial judge can be expected to follow the dictates of the appellate court; (2) whether reassignment is advisable to maintain the appearance of justice; (3) whether reassignment risks undue waste and duplication. *Id.* "In the rare case where a judge has repeatedly adhered to an erroneous view after the error is called to his attention . . . reassignment to another judge may be

- 18 -

advisable in order to avoid 'an exercise in futility in which the Court is merely marching up the hill only to march right down again.'" *Mahoney v. Loma Alta Prop. Owners Ass'n, Inc.,* [84 So.3d 907, 919] (Ala. Civ. App. []2011) (quoting *United States v. Tucker,* 404 U.S. 443, 452, 92 S. Ct. 589, 594, 30 L.Ed.2d 592 (1972)) (Blackmun, J., dissenting) (internal citation omitted)).

*Rudd v. Rudd*, No. W2011-01007-COA-R3CV, 2011 WL 6777030, at *7 (Tenn. Ct. App. Dec. 22, 2011) (other internal citations omitted). *See Culbertson v. Culbertson*, 455 S.W.3d 107, 157-58 (Tenn. Ct. App. 2014) (finding that consideration of the factors outlined in *Rudd* warranted reassignment to a new trial court judge upon remand); *Biggs v. Town of Nolensville*, No. M2021-00397-COA-R3-CV, 2022 WL 41117, at *6 (Tenn. Ct. App. Jan. 5, 2022) (finding that consideration of the *Rudd* factors did not mandate reassignment upon remand).

We have considered the factors delineated above and conclude that reassignment to a different trial judge upon remand is not warranted. Although reassignment would likely not risk undue waste and duplication of effort at this stage of the litigation, we determine that no evidence exists demonstrating that the trial court will not follow the dictates of this Court upon remand or that reassignment "is advisable to maintain the appearance of justice." *See Rudd*, 2011 WL 6777030, at *7. We therefore deny Ms. Gottesman's request for reassignment to a different trial court judge upon remand.

## VIII. Conclusion

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of the Heckers with respect to Ms. Gottesman's claim pursuant to the Tennessee Residential Property Disclosures Act as well as her claims of fraudulent misrepresentation and fraudulent concealment. We remand these issues to the trial court for further consideration. We affirm the trial court's grant of summary judgment concerning Ms. Gottesman's remaining claims. We deny Ms. Gottesman's request for reassignment to a different trial court judge upon remand and the Heckers' request for an award of attorney's fees. This matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed to the appellees, Todd Hecker and Tammy Hecker.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE